UNITED STATES *v.* STRAUS & SONS *et al.* (No. 954). STRAUS & SONS *et al. v.* UNITED STATES (No. 965).[1]

PROTEST—FUNCTION OF.

A protest serves the purpose not only of a notice to the collector of alleged errors in his classification or assessment so that he may correct his decision if so minded, but as well the purpose of an appeal to the Board of General Appraisers in case the collector declines or fails to make his decision conform to the protest. And once the limit fixed by the regulations within which the collector must pass upon the protest, namely, 30 days, has expired, the jurisdiction of the Board of General Appraisers attaches and the authority of the collector in the premises is suspended, and this whether the papers have been transmitted or not.—Gulbenkian *v.* Stranahan (158 Fed., 836) distinguished.

United States Court of Customs Appeals, February 10, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7370 (T. D. 32581). [Affirmed.]

*William L. Wemple,* Assistant Attorney General (*Frank L. Lawrence,* special attorney, on the brief), for the United States.

*Walden & Webster* for Straus & Sons.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Five consignments of earthenware, known as Carmelite ware, were severally entered at the New York customhouse on October 5, 1909, October 21, 1909, November 11, 1909, January 6, 1910, and March 7, 1910. The collector of customs classified the merchandise as brown earthenware covered with a transparent vitrified glaze, and assessed it for duty at 55 per cent ad valorem under the provisions of paragraph 94 of the tariff act of 1909, which paragraph reads as follows:

94. China, porcelain, parian, bisque, earthen, stone and crockery ware, plain white, plain brown, including clock cases with or without movements, pill tiles, plaques, ornaments, toys, charms, vases, statues, statuettes, mugs, cups, steins, and lamps, all the foregoing wholly or in chief value of such ware, not painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner; and manufactures in chief value of such ware not specially provided for in this section, fifty-five per centum ad valorem.

The importers were not satisfied with the decision of the collector and accordingly filed with him in due time their protests claiming a lower rate of duty. The collector did not forward the protests to the Board of General Appraisers for hearing and determination, but retained them, evidently awaiting a decision of the board on like protests which were then pending before that body. When the board

---

[1] Reported in T. D. 34193 (26 Treas. Dec., 278).

announced its decision in T. D. 30543 that goods such as those involved in the protests were dutiable as enameled earthenware at 60 per cent ad valorem under the provisions of paragraph 93, the collector, through his deputy, directed the appraiser, under date of September 8, 1910, to make a further report on the merchandise covered by the suspended protests.   On January 9, 1911, the appraiser reported that—

In view of G. A. 7009 (T. D. 30543), the merchandise in question would now be returned for duty at 60 per cent under paragraph 93.

In accordance with that report the entries were reliquidated on March 3, 1911, to which action the importers entered their protests, claiming first, that the goods were dutiable at lower rates than 55 per cent ad valorem, and, second, that inasmuch as the reliquidation had taken place more than a year after entry no higher rate of duty than that at which the goods were originally liquidated could be exacted. As a result of the protest against reliquidation all protests, papers, and exhibits were forwarded by the collector to the Board of General Appraisers for hearing and determination.

From the original report of the appraiser, dated April 9, 1910, it appears that the merchandise is a glazed earthenware, known as Carmelite ware, dutiable, as appears from his supplementary report of January 9, 1911, at 60 per cent ad valorem, in accordance with T. D. 30543.   No evidence was introduced on the hearing and counsel for the importers admit that the merchandise is earthenware similar to that passed upon by this court in Frank v. United States (2 Ct. Cust. Appls., 85; T. D. 31633), in which case it was held that such goods were dutiable at 60 per cent ad valorem.

At the time that the reliquidation was made there was pending a protest against the original liquidation to which the collector had not acceded.   The first question to be determined, therefore, is whether, with a protest pending and undecided by the board, the collector had authority to make a reliquidation along lines not covered by the protest, and thereby invalidate not only the protest but also the appeal which it effectuated to the Board of General Appraisers.

Subsection 14 of section 28 of the tariff act of 1909 provides that the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise shall be final and conclusive unless the importer gives notice in writing of his dissatisfaction to the collector, setting forth therein distinctly and specifically the reasons for his objections to such decision.   Upon such notice and the payment of the duties and charges the collector is required by the same provision to transmit the invoice and all the papers and exhibits connected therewith to the Board of General Appraisers for due assignment and determination.   Under the Customs Regulations it is the duty of the collector and naval officer when the protest is received to review the official action taken upon the entry, and if the

collector be satisfied that the claim of the importer is a valid one he may, in conjunction with the naval officer, *reliquidate the entry in accordance with the protest and send a statement of the facts to the Board of General Appraisers.* (Customs Regulations, 1908, art. 1072.) If, on the other hand, the collector does not regard the protest as well taken he is required by the Customs Regulations to transmit, within 30 days from the date of his decision, the protest, invoice, and all the papers and exhibits connected therewith to the Board of General Appraisers. (Customs Regulations, 1908, art. 1073.)

Reading the statute and Customs Regulations together, we think it evident that the protest serves the purpose not only of a notice to the collector of alleged errors in his classification or assessment so that he may correct his decision in conformity with the protest should he be so minded, but also of an appeal to the Board of General Appraisers in case the collector declines or fails to make his decision conform to the protest. See Gulbenkian *v.* Stranahan (158 Fed., 836–838).

To determine whether he will sustain the importer's objections or stand on his original liquidation the collector must of course retain the protest, invoice, papers, and exhibits for a reasonable time, and while he lawfully retains them it may be said that he has his decision under review and that the appellate jurisdiction of the board does not attach. When, however, the collector declines to admit the validity of the protest and the period during which he may properly retain the protest, invoice, papers, and exhibits has passed, the Board of General Appraisers acquires jurisdiction to decide the controversy and the power and authority of the collector over the subject matter is suspended pending decision by that tribunal.

It is true that no time is fixed by subsection 14 for his consideration of the protest or the review of his decision or for his retention of the papers. The Customs Regulations supply that deficiency, however, by making it obligatory upon the collector to transmit the record within 30 days after protest to the Board of General Appraisers, unless he regards the protest as valid. Such a regulation was within the power of the Secretary of the Treasury to make, and as it is not inconsistent with any law in force applicable to the case, and is not shown to be unreasonable, we must hold, first, that it was the collector's duty to forward the protest and papers within the period specified by the regulation—Kendall *v.* Lyman (161 Fed., 652); and, second, that his jurisdiction of the subject matter was limited to the time prescribed for his retention of the record. Of course, by forwarding the papers and thus indicating his adherence to his decision and refusal to accede to the protest, the collector may divest himself of jurisdiction *within* the 30 days, but once the 30 days have passed, whether the papers have been transmitted or not, the appeal is perfected, the jurisdiction of the Board of General Appraisers attaches, and the authority of the collector is suspended pending the

decision of the appellate tribunal. Any other holding in this matter would simply mean that the collector of customs, by violating his duty and retaining the protest, could deprive the importer of a speedy adjudication of his appeal and impede the Board of General Appraisers in the exercise of the jurisdiction with which it is vested once the collector has failed to recognize the protest as just. *In re* Bolognesi (T. D. 26414); *In re* Benziger Bros. (T. D. 26898). Indeed, that Congress recognized that the pendency of a protest suspended the authority of the collector to reliquidate seems fairly inferable from the fact that it excluded protested cases from the operation of the statute making the original liquidation final and conclusive on all parties one year after entry. (Sec. 21, act of June 22, 1874.)

In some cases a reliquidation not on grounds covered by the protest has been sustained by the courts, notwithstanding the fact that the protest of the importers was still in the hands of the collector at the time the reliquidation was made. Gulbenkian *v.* Stranahan (158 Fed., 836). In those cases, however, the reliquidation was had under order from the Secretary of the Treasury by virtue of section 25 of the act of August 27, 1894, and we think that such cases are not pertinent to the issues raised by the protest now under consideration. Section 25 reads as follows:

SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint, and be proclaimed by the Secretary of the Treasury immediately after the passage of this act and thereafter quarterly on the first day of January, April, July, and October in each year. And the values so proclaimed shall be followed in estimating the value of all foreign merchandise exported to the United States during the quarter for which the value is proclaimed, and the date of the consular certification of any invoice shall, for the purposes of this section, be considered the date of exportation: *Provided,* That the Secretary of the Treasury may order the reliquidation of any entry at a different value, whenever satisfactory evidence shall be produced to him showing that the value in United States currency of the foreign money specified in the invoice was, at the date of certification, at least ten per centum more or less than the value proclaimed during the quarter in which the consular certification occurred.

Whether the power conferred upon the Secretary by the proviso to that section is subject to the provisions of the act of June 22, 1874, making the settlement of duties and free admission of goods final and conclusive upon all parties after the expiration of one year from the date of entry, we are not prepared to say at this time. We think it certain, however, that under the proviso the action of the Secretary, unless barred by the time limit, is conclusive when he proclaims the value in United States money of foreign currency and that his decision as to such value is not subject to review. Klumpp *v.* Thomas (162 Fed., 853–855); Cramer *v.* Arthur (102 U. S., 612, 616–617); Hadden *v.* Merritt (115 U. S., 25, 27–28); United States *v.* Klingenberg (153 U. S., 93, 100–101); United States *v.* Whitridge (197 U. S., 135, 146).

In our opinion the special jurisdiction vested in the Secretary of the Treasury by section 25 is exclusive and may be exercised wholly without regard to the pendency of a protest and without respect to whether such protest is in the hands of the collector or has passed to the custody of the Board of General Appraisers. In other words, the determination of foreign currency values lies with the Secretary of the Treasury and not with the collector or with the Board of General Appraisers, and consequently a reliquidation ordered in conformity with section 25 of the act of August 27, 1894, must follow irrespective of the pendency of the protest or where it is pending.

We are, therefore, of the opinion that decisions had under the provisions of that section are not applicable to this case, in which no question of foreign currency is involved, and that the board very properly sustained the protest of the importers to the collector's reliquidation made by him after he had lost and the board had acquired jurisdiction of the subject matter.

The goods in controversy are admittedly similar to those passed upon by this court in Frank *v.* United States (2 Ct. Cust. Appls.; 85; T. D. 31633), and held to be dutiable at 60 per cent ad valorem. We must, therefore, rule that the protest of the importers claiming the merchandise to be dutiable at less than 55 per cent ad valorem, the rate assessed by the collector, was not well taken and that it was properly overruled by the board without affirming the action of the collector.

The decision of the Board of General Appraisers is *affirmed.*