## NATIONAL HAT PIN CO. v. UNITED STATES (No. 1352).[1]

1. PRESUMPTION OF CORRECTNESS OF COLLECTOR'S ACTION.

Upon the coming in of the protest it is the duty of the collector to forward within 30 days the invoice and all the papers and exhibits connected therewith to the board, unless, of course, reliquidation had been considered proper. In this case a memorandum made by the collector subsequent to the lapse of the 30 days can not be deemed the collector's decision. He was without further jurisdiction and such a memorandum does not overcome the presumption of correctness which attaches to the decision already made and entered.

2. CITATION OF FORMER DECISION OF BOARD.

The mere citation to a former decision by the board by the appraiser in his report to the collector is not sufficient to identify the merchandise in the two cases.— United States v. Eytinge (4 Ct. Cust. Appls., 266; T. D. 33486).

United States Court of Customs Appeals, November 27, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34521 (T. D. 34090).

[Affirmed.]

*Brown & Gerry* for appellant.

*Bert Hanson*, Assistant Attorney General (*Leland N. Wood*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The record in connection with the files in this case shows the following facts: The entry was made at the port of New York February 17, 1911, and liquidated May 17 of the same year. The protest was received by the collector June 1, 1911, the material part of which is as follows:

Hon. COLLECTOR OF CUSTOMS,
            *Port of New York.*

SIR: Notice of dissatisfaction is hereby given with, and protest is hereby made against, your ascertainment and liquidation of duties and your decision assessing duty at 45 per cent ad valorem or other rate or rates on hatpin heads, settings, or similar merchandise covered by entries below named. The reasons for objection under the tariff act of August 5, 1909, are as follows: Said merchandise is covered by and is dutiable under the last part of paragraph 449 (as imitation precious stones or

---

[1] Reported in T. D. 34971 (27 Treas. Dec., 577).

otherwise) at only 20 per cent ad valorem, or the first part of paragraph 449 (as pearls, or diamonds, or otherwise) at only 10 per cent ad valorem, or the first part of paragraph 421 (as beads) at only 35 per cent ad valorem, or paragraph 462 (as manufactures wholly or in chief value of amber, or wax, or otherwise) at only 25 per cent ad valorem, or paragraph 464 (as shells or as manufactures wholly or in chief value of mother-of-pearl or shell or otherwise) at only 35 per cent ad valorem, or paragraph 480 at only 10 per cent ad valorem or only 20 per cent ad valorem. * * *

The appraiser's written answer to the protest, dated November 10, 1911, was that "the merchandise consists of hatpin heads of glass, returned as mf. of glass at rate of 45 per cent, paragraph 109, act of August 5, 1909. Note G. A. 7267 (T. D. 31844)."

November 15, 1911, the deputy collector returned to the appraiser his above answer to the protest with the following indorsement thereon:

APPRAISER: Please report whether the merchandise referred to herein is in imitation of precious stones.

On the 7th of December, 1911, the appraiser, who made the original report, returned the document to the collector with the indorsement:

COLLECTOR: The within described merchandise is in imitation of precious stones.

On the 16th of December, 1911, the collector forwarded these papers, including the protest, to the Board of General Appraisers with the following indorsement thereon:

NEW YORK, *December 16, 1911.*

Respectfully referred to the Board of United States General Appraisers for decision.

The assessment of duty protested against was made in accordance with the return of the appraiser on the invoice as stated in his special report herewith, dated 10/11/11,

In view of said report the protest appears partly valid, and this office stands ready to reliquidate accordingly if authorized by your board.

The protest was filed in statutory time.

WM. LOEB, Jr., *Collector.*

On the 19th of January, 1914, Board No. 1 of the Board of General Appraisers filed its decision in the case, saying therein, among other things, that the importer had submitted the protest on the appraiser's report, and further saying that—

: It will be observed the appraiser's report was that the merchandise consists of hatpin heads composed of glass. The appraiser did not report that the merchandise in this protest was similar to and of the same character and class as that referred to in the authority cited, and no effort was made by the importer to connect the merchandise in question with the merchandise referred to therein, nor did he move the record in G. A. 7267 (T. D. 31844) into the record in the case at bar.

In United States *v.* Lun Chong & Co. (3 Ct. Cust. Appls., 468; T. D. 35401) the court held that unless a previous record is moved into the case on trial it can not be taken for granted that the merchandise is similar, although the collector may in his report so state. It was there said:

It is not contended in this court by counsel for the importer that, standing alone, the mere submission of a case by reference to a former case imports into the present

record the testimony in the former case; but it is said that as the record shows that the collector, in his letters transmitting the protests, reports that the merchandise in the instant case is like that in the case cited, the former case should be held *stare decisis*. This is carrying the rule of *stare decisis* further than the law justifies. When the present issue came on for trial, the presumption that the collector's action was correct obtained. It was incumbent on the importer, therefore, to overcome this presumption. The citation of a former case did not challenge the attention of the Government in the claim that the testimony in that case was to be made the basis of a decision in the present.

It would appear from this holding that the mere citation of an authority does not overcome the presumption of correctness attaching to the action of the collector. That the cited authority may be used for the principle enunciated is correct, but as to the merchandise involved the presumption of similarity does not attach.

The protest is overruled.

From this decision of the board the importer brings his appeal to this court.

It is here contended by the importer that "there is no presumption of correctness attaching to the original action of the collector in the case at bar; or, if there is such a presumption, it is overcome by the collector's report in the case, because he states that the protest is valid and that he is ready to reliquidate the entry." In this connection it is also claimed that the merchandise is shown by the record to be the same as that covered by G. A. 7267, referred to by the appraiser. This claim of identity is founded upon the fact that in that case the board described the merchandise as "imitation sapphires, amethysts, and sardonyx, composed of glass or paste and intended for use as hatpin tops." We note here that the statement of the collector in the case at bar was that the protest was *partly* valid and that he was ready to reliquidate *if authorized* by the board.

It is contended by the Government that the reference to G. A. 7267 by the appraiser is not sufficient to show that the merchandise here is like or is entitled to the same classification as in that case, and, further, that the presumption obtains that the collector's classification is correct, anything contained in the record to the contrary notwithstanding.

In this connection the Government points out that, under articles 1072 and 1073 of the Customs Regulations of 1908, in connection with T. D. 29939, extending the application thereof to proceedings under the tariff act of 1909, the collector of customs not only had the right, but it was his duty, if satisfied that the importer's protest claim was a valid one, to reliquidate in accordance therewith. We understand said articles are in force and applicable to this case. Article 1072 is as follows:

Art. 1072. *Collector's review on protest.*—When an importer has paid all duties due in case of entry for consumption and has duly notified the collector of his dissatisfaction, the collector and the naval officer, if any, shall review his action upon the

entry, and if satisfied that the claim of the importer is a valid one shall reliquidate the entry in accordance therewith in conjunction with the naval officer, and shall send a statement of the facts to the Board of General Appraisers. .

The applicable part of article 107.3 is as follows:

ART. 1073. *Transmission to Board of General Appraisers.*—Unless the claim set forth in the protest is regarded by the collector, after reviewing his action with regard to the entry, as a valid one, he shall, within 30 days thereafter, transmit the protest, invoice, and all the papers and exhibits connected therewith to the Board of United States General Appraisers at 641 Washington Street, New York. * * *

Upon the coming in of the protest it was the duty of the collector to forward within 30 days the invoice and all the papers and exhibits connected therewith to the Board of General Appraisers, unless he determined that the protest was well founded and proceeded to reliquidate. At the expiration of the 30 days the collector, unless he acceded to the protest, was without further jurisdiction in the matter as to the classification and assessment of the merchandise, and jurisdiction over those issues had attached to the board whether the papers in the case had or had not actually been forwarded to the board. United States *v.* Strauss (5 Ct. Cust. Appls., 147; T. D. 34193).

Applying these rules to the facts here, it is clear that on and after July 1, 1911, the collector had no authority or jurisdiction over the questions raised by the protest, because the 30 days had elapsed from the filing of the protest with him and he had not acceded thereto; hence the only duty cast upon him was the administrative duty of forwarding the proper papers to the board. It is true that he did not perform this duty within the time required, but this delinquency on his part could not enlarge his authority. He could not in the interim, although he may have changed his mind respecting the classification of the merchandise or its duty rate, modify the decision he had already made on those questions, jurisdiction to determine the correctness of which was already vested in the board, nor could he by any act of his impeach or affect the presumed correctness of that decision, unless perhaps there was some claim of fraud, with which we are not concerned in this case. For his own information, he might talk with the appraiser about the case or refer it to him for further report after the expiration of the 30 days, but such action or anything resulting therefrom could not operate against the presumed correctness of his *decision* already made. It is the function of the collector to classify the merchandise and determine the rate and amount of duty. It is the function of the appraiser to determine its value, and we have held upon full consideration that when the appraiser has once made his appraisement and returned the same to the collector he is without authority to recall and change the same. United States *v.* Bennett (2 Ct. Cust. Appls., 249; T. D. 31975).

It is. analogous at least to hold that the collector having once rendered his judgment upon the questions within his jurisdiction, and the time having elapsed within which he may lawfully revise the same, is likewise without authority then so to do.    Nor is this all—the statute does not clothe the appraiser with any duty respecting the classification of the merchandise.    His function relates to the ascertainment of its dutiable value, and although the customs regulations (see articles 1514 and 1515) require the appraiser, among other things, to describe the merchandise in such terms as will enable the collector to classify it for duty, yet this is by the express terms of the said regulations for the purpose of *assisting* the collector, and is not conclusive in any way upon his classification nor the correctness thereof.    The collector may or may not classify according to the appraiser's description.    In the case at bar it can make no difference how the appraiser has described the merchandise in his supplemental report to the collector, because at that time the collector was without jurisdiction to revise the judgment he had already rendered.

Under these circumstances we can not think, as is claimed by the importer, that this supplemental report of the appraiser should be held to deprive the collector's classification and assessment of the presumption of correctness which generally attaches thereto, nor to relieve the importer of the duty of proving that the claim made in his protest as to the proper classification of the merchandise was correct.    It is not a case, as claimed by importer, where one of the parties has come into court and confessed judgment.    At the most, if it were held to affect his prior decision, the collector's attitude as disclosed by his communication to the board is that the protest appears to be *partly* valid, but just what part is valid the collector does not say.    Evidence would seem to be required to show, in view of the various claims made in the protest, just what claim is valid.

Although we. are of opinion that the case may be disposed of on the grounds already mentioned, it should perhaps be added that we think the contention of the Government that the mere citation to a former decision of the board by the appraiser in his report to the collector is not sufficient to identify the merchandise in the instant case as being like that involved in the case cited is sound.    Especially is this true of such a citation as is involved in this case, which is merely a reference to the cited authority without any statement on the part of the appraiser that the merchandise is identical.

The observations of this court by Martin, Judge, in United States *v.* Eytinge (4 Ct. Cust. Appls., 266; T. D. 33486) are pertinent here. In that case at the hearing before the board a witness was called by the importers who testified that the articles were similar in character to those involved in a former decision of the board.    The

importers then introduced a copy of that decision and rested. There as here no samples of the merchandise were submitted. It was there said:

The importers did not offer the recorded testimony taken in the former case as evidence in the present case. * * * No sample of the merchandise was introduced in evidence nor was any sample retained by the appraiser. * * * The foregoing record certainly proves that the board's decision in the present case consistently follows the board's former decision in a similar case; but the record totally fails to disclose whether or not the former decision itself was sustained by the facts and the law of the case. The finding reported by the appraiser and the assessment made by the collector are presumed to be correct unless rebutted by sufficient evidence to the contrary. In the present record there is no evidence at all which contradicts the finding or the assessment. * * * It therefore becomes apparent that there was a total failure of evidence before the board in support of the protest, and in such case it is the duty of the court to permit the collector's assessment to govern the importation.

In the case at bar the appraiser's report of December 7, if it be conceded to possess evidentiary value, is simply that the merchandise is in imitation of precious stones, while the provision of paragraph 449, for the assessment under which the importer claims in this court, is for such stones "for use in the manufacture of jewelry." As to whether the importations here are for that use the record in the present case is entirely silent, while in the cited case the board found as a matter of fact that the merchandise there was in form adapted for no substantial use other than for jewelry and millinery ornaments and that they were intended for use as hatpin heads. To adopt that finding as applicable to the merchandise here is to indulge the presumption that hatpin heads made of glass are for use in the manufacture of jewelry without any evidence whatever as to the fact. It is said by the importer that hatpins with precious stones have again and again been held to be articles of jewelry, which may be granted, and it has also been held that other hatpins are not jewelry according as the facts may have appeared in each particular case. We find it unnecessary to enter into a discussion of this question or do more than refer to one case where the subject is considered. See United States v. Flory (4 Ct. Cust. Appls., 87; T. D. 33367).

We think the use can not be inferred, but must, unless conceded, be shown.

To avoid any misunderstanding of the scope of this decision, we take occasion to say that it is not intended hereby to impose any limitation upon the proper exercise by the collector of authority conferred upon him under the provisions of subsection 15 of section 28 of the act of 1909.

The judgment of the Board of General Appraisers is *affirmed*.