TOWER MANUFACTURING & NOVELTY Co. *et al. v.* UNITED STATES
(No. 1530).[1]

1. APPRAISER'S REPORT AS EVIDENCE.
   The reports made by local appraisers to collectors concerning merchandise, when they are made within the line of duty, become part of the record in the case, and as such may be considered upon the trial of a protest before the board.
2. REPORT MORE THAN 30 DAYS AFTER PROTEST FILED.
   A report made by an appraiser after the lapse of the 30 days fixed by law wherein reports must be made, is extra-official and is not entitled to be considered a part of the record in the case.

---

[1] Reported in T. D. 35478 (28 Treas. Dec., 964).

United States Court of Customs Appeals, May 21, 1915.

APPEAL from Board of United States General Appraisers, Abstract 37171.

[Affirmed as to part; re ersed as to part.]

*Comstock & Washburn* (*J. Stuart Tompkins* on the brief) for appellants.
*Bert Hanson*, Assistant Attorney General (*John J. Mulvaney*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The issue which is presented in this case relates to merchandise which was reported by the appraiser to be leather cases fitted with desk sets and identical with the merchandise which was the subject of the board's decision in Abstract 25517 (T. D. 31568).

Duty was assessed upon the foregoing articles at the rate of 50 per cent ad valorem under the provision in paragraph 452, tariff act of 1909, for "cases, made wholly of or in chief value of leather, * * * permanently fitted and furnished with traveling, bottle, drinking, dining or luncheon, and similar sets."

The importers protested against the assessment, claiming duty at 40 per cent ad valorem upon the articles as "manufactures of leather, or of which leather is the component material of chief value," which provision also is in paragraph 452, *supra*.

Thereupon the collector requested the appraiser, in writing, to report the number of the exhibit in Abstract 25517 (T. D. 31568), *supra*, which represented the merchandise under protest.

In answer to this request the appraiser reported, in writing, that the merchandise under protest was similar to that described as Exhibit 5 in the abstract cited and that, in view of a later decision of the board, such articles would now be returned as dutiable at 40 per cent ad valorem, as claimed by the importers in their protest.

The collector, after receiving the second report of the appraiser, forwarded the protest and official files to the Board of General Appraisers with the following report:

> Respectfully referred to the Board of United States General Appraisers for decision.
> The assessment of duty protested against was made in accordance with the return of the appraiser on the invoice, as stated in his special report, herewith, dated 7/17/11.
> In view of said report the protest appears partly valid, and this office stands ready to reliquidate accordingly, if authorized by your board.

A reference to the board's decision in Abstract 25517 (T. D. 31568), *supra*, discloses the fact that Exhibit 5 in that case consisted of " a leather sheath containing a pair of shears and a paper cutter, each about 9 inches in length.". It will be observed that this reference by the appraiser to the board's former decision was not designed to import the testimony taken in that case into the present record, but was simply an adoption by reference of a description of the articles involved in the former case.

The protest was thus submitted to the board upon the official files alone, and without any other evidence of any kind, whereupon the board overruled the same. The importers now appeal from that decision.

The board stated in its decision of the case that it would have held the foregoing reports of the appraiser to be sufficient to identify the merchandise under protest, and to require a reclassification of the same in accordance with other decisions of the board concerning similar merchandise, but that these reports had both been made more than 30 days after the filing of the protest in the case, and consequently could not be regarded as evidence tending to establish the identity of the merchandise in question. The board cited the decision of this court in the case of National Hat Pin Co. *v.* United States (5 Ct. Cust. Appls., 435; T. D. 34971) as the authority which prevented it from receiving the reports of the appraiser as evidence in the case.

At this point, however, it should be noted that according to the record and the official files forwarded therewith, in the case of two of the protests which are included in the board's decision, the reports of the appraisers were filed within 30 days after the filing of the protests to which they relate. These are the protest of J. D. Irwin & Co (No. 605895–74778), wherein the protest was filed on October 23, 1911, and the appraiser's report on November 11, 1911, and the protest of E. Krusius (No. 656807–28003), wherein the protest was filed on May 29, 1912, and the appraiser's report on June 21, 1912. These protests, therefore, are not governed by the principle to which the board refers, and consequently they will be remanded to the board for a new trial.

The issue, however, as now presented to the court is twofold: First, should the official reports of a local appraiser concerning protested merchandise be regarded in any event as evidence at the trial of the protest before the board; and, second, if so, should they be considered as evidence in case they are made more than 30 days after the filing of the protest?

In answer to the first question presented, we are of the opinion that the reports made by local appraisers to collectors concerning merchandise when within their duties become part of the record in the case, and as such may be considered upon the trial of the protest before the board. The duties of local appraisers are defined by articles 1514 *et seq.*, Customs Regulations of 1908. According to article 1514 the appraisers are required among other things, in order to assist the collector in the assessment of duty, to describe the merchandise in such terms as will enable the collector to classify the same for duty. By article 1516, *idem*, it is provided among other things that appraisers shall report to the collector in writing con-

cerning the prices and quantities of the goods examined by them, and shall note upon the invoice the description of the goods covered thereby. They shall also furnish any further information affecting the assessment of duty when requested by the collector or naval officer. In section 14 of the administrative act it is provided that when a protest is forwarded by the collector to the board he shall transmit "the invoices and all the papers and exhibits connected therewith."

In view of the foregoing provisions it seems clear that the appraiser's reports to the collector, such as are therein defined, are part of the official transaction and record which are under review at the trial of a protest, and the board should give them that presumption of correctness which properly attends the official acts and reports of public officers when made in the performance of their duties. It may furthermore be said that this course of procedure has been so long followed by the board and the courts that this fact alone argues legislative authority therefor.

We come next to consider whether the appraiser's reports now in question were extra-official because of the fact that they were made more than 30 days subsequent to the filing of the protest.

In the case of the United States v. Straus & Sons (5 Ct. Cust. Appls., 147; T. D. 34193) we held that under section 14 of the administrative act, as amended August 5, 1909, construed together with Customs Regulations of 1908 (art. 1073), it was the duty of the collector to forward to the board each unsustained protest within the period of 30 days after the filing of such protest, and that "once the 30 days have passed, whether the papers have been transmitted or not, the appeal is perfected, the jurisdiction of the Board of General Appraisers attaches, and the authority of the collector is suspended pending the decision of the appellate tribunal." In this connection we said, "any other holding in this matter would simply mean that the collector of customs, by violating his duty and retaining the protest, could deprive the importer of a speedy adjudication of his appeal and impede the Board of General Appraisers in the exercise of the jurisdiction with which it is vested once the collector has failed to recognize the protest as just." This conclusion of the court rested upon the reasoning that Congress and the department evidently intended to place some limit upon the time within which the collector should decide upon the merits of a lawful protest and transmit the same to the board, and that article 1073, *supra*, was formulated for that purpose. Accordingly it was held that the collector was thereby required to transmit each unsustained protest to the board within 30 days after the same was filed with him. This conclusion also implied that in event of the collector's failure to perform this duty the board's jurisdiction would nevertheless attach to the protest and the collector's jurisdiction thereover be suspended.

In the case of the National Hat Pin Co. *v.* United States (5 Ct. Cust. Appls., 435, T. D. 34971) the court held that certain reports concerning merchandise which were called for by the collector and made by the appraiser after the lapse of the 30-day period aforesaid were extra-official, and therefore not entitled to be considered as parts of the official record in the case. This decision was but a corollary of that announced in the Straus case, *supra.*

The present case arose under the tariff act of 1909 and was within the rules laid down in the two foregoing decisions. Therefore the action of the board in refusing to consider the reports in question was plainly within the rule laid down by those decisions, and the same is affirmed as to all the protests except those of J. D. Irwin & Co. (No. 605895–74778) and E. Krusius (No. 656807–28003), and as to these two protests the decision of the board is reversed.

It has been called to our attention in the argument that in the tariff act of 1913 Congress has added several new provisions to the administrative act in relation to protests, and it is argued that these provisions will render the application of the foregoing rule impracticable or at times impossible. It may be the case that these provisions will be supplemented by new regulations of the department. Inasmuch, however, as such new provisions are not involved in this case we are not called upon to apply them to the present issue.

The board's decision is therefore in part *affirmed* and in part *reversed,* as is above stated.