BONWIT TELLER & CO. *v.* UNITED STATES (No. 3446) [1]

[1] T. D. 45500.

United States Court of Customs and Patent Appeals, February 1, 1932

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

On November 27, 1931, this court delivered its opinion in this suit, 19 C. C. P. A. (Customs) 238 T. D. 45339, affirming the judgment of the Customs Court, T. D. 44728, holding in effect that a special report of a local appraiser purporting to describe the involved merchandise, made subsequent to the 60-day period provided by section 515 of the Tariff Act of 1922 as to the time within which the collector of customs should act upon a protest, was extra-official and did not become legally a part of the record upon appeal to the United States Customs Court.

The essential facts of the case were set forth in our said opinion and in the opinion of the court below.

Appellants, on December 2, 1931, filed an application for rehearing, insisting that this court "did not decide the issue presented," as same "was specifically embodied in assignments of error 3, 4, 5 and 6."

Our reason for not passing specifically upon those assignments of error rested largely upon the interpretation given by us to assignment 2, which reads:

2. In not considering as a part of the record in the case the description of the imported merchandise made by the appraiser and transmitted by the collector of customs to the court with the protest.

This we interpreted to mean that it was the view of appellants that the special report became *ipso facto*, as it were, and, legally, a part of the record, to be considered as a binding description of the merchandise in the absence of any testimony contesting it. With this contention we were unable to agree, in the light of the authorities cited in our former opinion, and it appeared to us that the idea which we thought was inherent in assignment 2 occurred in others of the assignments; that it was the decisive point of the case, and that, therefore, there was no occasion to discuss such incidental questions as the validity or force of the customs regulations suggested in still other assignments.

It is noted that in assignment of error 3 appellants contend that the special report was "*a part of the record* and binding upon the court in the absence of evidence contradicting the same," and that in assignment 6, it is insisted—

that such description of the merchandise is *binding upon the court* unless competent evidence of its incorrectness is adduced by the party litigant contesting such official description. (Italics ours.)

Notwithstanding the quoted expressions from the assignments, however, appellants in their application for rehearing say—

In the appellant's brief and in the oral agrument before this court, it was specifically stated that it was *not urged that an appraiser's special report as such was legally a part of the record upon appeal to the United States Customs Court.* (Italics quoted.) Attention is directed to the brief filed for appellant, page 12, in which it is stated—

We are only urging that the collector is required by law to furnish the court with an official description of the imported merchandise, and that that official description *is a part of the record* of the case and binding on the court, unless evidence is offered to show that it is incorrect, and the burden is upon the party who disputes the correctness of such official description. (Italics ours.)

We confess to some difficulty now in reconciling the contention of appellants in their application for rehearing that "it was not urged" that the special report *"was legally a part of the record * * * "* with the statements in the assignments of error and with the words from the original brief quoted, *supra*, "that that official description *is a part of the record * * *  *, and binding on the court, * * *.*"

It is possible that the sense in which we used the word "legally" in connection with the words "a part of the record" may not have been made clear.

The special report in issue was, of course, *physically* a part of the record, but what we meant to hold and did, in effect, hold was that its mere physical presence did not constitute it a *legal* part of the record. It was pointed out that this holding followed prior decisions of this court there cited.

We are not yet able to regard it as essential to the decision of the case to render an adjudication upon the contention of appellants that articles 777 and 779 of the Customs Regulations of 1923 "have the full force and effect of law." We may, for the purposes of this case, assume that to be true without in any wise altering the conclusion formerly reached.

We deem it not improper, however, to now make some further comment in view of the contention made in the application for rehearing.

Section 500 of the Tariff Act of 1922 makes it the duty of the appraiser, "under such rules and regulations as the Secretary of the Treasury may prescribe," among other things—

(4) To describe the merchandise in order that the collector may determine the dutiable classification thereof; and

(5) To report his decisions to the collector.

Those are the only duties expressly prescribed by the statute for the appraiser to perform which are in any wise pertinent to any issue of this suit.

Notwithstanding the statutory duty thus imposed upon the appraiser of describing the merchandise, actual classification and

assessment of duty are the legal functions of the collector. These acts are his decisions and to them attaches the legal presumption of correctness. This is elemental in customs law and requires no citation of authorities.

Furthermore, the statutes nowhere provide specifically that the collector shall forward to the Customs Court a "description of the character of the merchandise." That is provided only by the regulations (art. 779 of Customs Regulations of 1923), but section 515 of the Tariff Act of 1922 does provide that the collector shall transmit to the court, in forwarding protests—

\* \* \* the entry and the accompanying papers and all exhibits \* \* \*.

In actual practice collectors undoubtedly are accustomed to accept the description of merchandise made by appraisers in pursuance of paragraph 4 of section 500, Tariff Act of 1922, *supra*, and base classification thereon. These descriptions noted on the invoices, entries, or made otherwise, become a part of the papers in the case required by the statute (section 515, *supra*) to be transmitted by the collector to the court.

In *Tower Manufacturing & Novelty Co.* v. *United States*, 6 Ct. Cust. Appls. 267, 269, T. D. 35478, this court said:

\* \* \* we are of the opinion that the reports made by local appraisers to collectors concerning merchandise *when within their duties* become part of the record in the case, and as such may be considered upon the trial of the protest before the board [now the United States Customs Court]. (Italics new here.)

Reference was made in the *Tower* case, *supra*, to *National Hat Pin Co.* v. *United States*, 5 Ct. Cust. Appls. 435, T. D. 34971, wherein it was held that (quotation from *Tower* case, 6 Ct. Cust. Appls. 271)—

\* \* \* certain reports concerning merchandise which were called for by the collector and made by the appraiser after the lapse of the 30-day period aforesaid [the *National Hat Pin* case arose under the act of 1909 which fixed a 30-day period] were extra-official, and therefore not entitled to be considered as parts of the official record in the case. \* \* \*

Applying these doctrines to the facts of the case at bar, we held (affirming the court below) in effect that the special report of the appraiser at issue was extra-official because delayed beyond the period in which the collector might review his decisions, and hence did not fall within the class of reports referred to in the *Tower* case in the phrase "when within their duties."

Upon a restudy of appellants' assignments of error, particularly 4 and 5, in connection with their original brief and their application for rehearing, we conclude they must have proceeded upon the theory that the special report contained the *only* "official description" of the merchandise and that if it was not "a part of the record, binding

upon the court," then the Customs Court, as stated in assignment 4, erred—

In not issuing an order to the collector to comply with this provision of law (art. 779 of the Customs Regulations of 1923) if the description furnished by the appraiser and transmitted by the collector was not a compliance with such provision.

If this be appellants' theory it is an erroneous one, because it overlooks the description of the merchandise made by the appraiser *before* the collector's classification which became the subject of the protest. The law presumes such a description to have been made as the statute provides, and the burden rested upon protestants to show that it had not been made or, if so made, that it was erroneous. It appears, as a matter of fact, that a description was made.

The collector's official report to the Customs Court, accompanying the protest, dated December 5, 1929, stated—

Duty was assessed at the appropriate rate provided for in the tariff act in force at time of entry, in accordance with the advisory return of the appraiser.

The summary of examination and appraisement, signed by an assistant appraiser and stamped "approved" by a local appraiser, carries marks, symbols, and letters, such as are usual upon such documents, and which, while not clear perhaps to one unfamiliar with the procedure, comply with the common practice, and are taken by us to be the description required of the appraiser by the statute. It is at least presumptively so.

After the classification supposedly based upon this description had been made, the protest was filed. The appraiser upon reexamination apparently found the original description to have been erroneous and so gave another description. This came too late for the collector to consider it and so, under the holding in the *National Hat Pin Co.* case, *supra*, was extra-official.

The matter then stood, as it had to stand, upon the collector's classification and the "description of the character of the merchandise" upon which is based such classification. That was the "official description" which was binding upon the court, in so far as description is binding. It was the only official description which was legally a part of the record.

It seems scarcely necessary to point out that appellants, in the trial of their protest, had the right to offer evidence showing the true description of the merchandise and any error made in its classification. But no such proof was offered. They elected to stand upon a document which, under prior decisions of this court, was not official, and apparently relied upon that document for refutation of the original description which was official, even conceding it to have been erroneous.

Assignment of error 5 suggests the idea that appellants were deprived by the collector of "the right to an official report of the description of the imported merchandise" on account of said collector "withholding his report to the court beyond 60 days."

The fallacy of this is evident when it is recalled that if the collector, at the very moment the 60-day period had elapsed, had forwarded the protest and such papers as he then had to the Customs Court, the legal record, with the presumption of correctness appertaining to the collector's classification, would have been just what it legally was upon the trial. The special report of the appraiser would not have been a part of it, because it was not in the collector's hands until long after the lapsing of said period. The "official description" would have been the original description as above set forth.

Under such circumstances appellants would have had to overcome the presumption of correctness by evidence other than that contained in the record as it then stood. That was all they had to do under the procedure which did occur, and that they failed to do.

The application for rehearing is *denied,* our former decision being adhered to.