UNITED STATES *v*. BULLOCKS, INC. (No. 4106)[1]

United States Court of Customs and Patent Appeals, February 28, 1938

*Joseph R. Jackson,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

*Lawrence A. Harper* for appellee.

[Oral argument December 7, 1937, by Mr. Donohue and Mr. Harper]

Before BLAND, Acting Presiding Judge, and HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding imported card-table covers dutiable at 65 per centum ad valorem as manufactures in chief value of silk, not specially provided for, under paragraph 1211 of the Tariff Act of 1930, as claimed by appellee.

The merchandise was assessed for duty by the collector at the port of Los Angeles at 90 per centum ad valorem under paragraph 1529 (a) of that act.

Paragraph 1211 and the pertinent part of paragraph 1529 (a) read:

PAR. 1211. All manufactures, wholly or in chief value of silk, not specially provided for, 65 per centum ad valorem.

PAR. 1529 (a). * * * braids, loom woven and ornamented in the process of weaving, or made by hand, or on a lace, knitting, or braiding machine; and fabrics and articles embroidered * * *; all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished * * *, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, * * * 90 per centum ad valorem.
* * *

Merchandise like that here involved was before this court in the case of *United States* v. *Bullocks, Inc.*, 24 C. C. P. A. (Customs) 41, T. D. 48330, and was described in the decision in that case as follows:

It [the sample] consists of a silk cloth piece approximately 36 by 36 inches in dimension, on the underside of which is sewed a lining of rubberlike material. The article is conceded to be in chief value of silk. Underneath each corner of the article and running diagonally across such corner there is stitched a strip of plain elastic material about five inches long and one-fourth of an inch wide. The strips are stitched to the cover only at the ends of such strips, the intermediate portions being left free for the obvious purpose of being drawn upon the corners of the table.

The record contains the report of the collector, and the appraiser's answer to the protest.

In the collector's report, under the heading "DESCRIPTION OF MERCHANDISE AND ASSESSMENT", appears the language "Embroideries at 90%".

The protest was filed February 1, 1934. The appraiser's answer to the protest is dated May 7, 1934, and the report of the collector September 27, 1934.

As the appraiser's answer to the protest (wherein it was stated that the merchandise was composed in part of braid, and that it had been "advisorily" so classified) and the collector's report (wherein it was stated that the merchandise was "Embroideries") were made more than 90 days after the protest was filed and after the Customs Court had attained jurisdiction of the cause, they were extra-official, and as held by the trial court, may not be considered as parts of the record in the case. Section 515, Tariff Act, 1930; *National Hatpin Co.* v. *United States*, 5 Ct. Cust. Appls. 435, T. D. 34971; *Tower Mfg. & Novelty Co.* v. *United States*, 6 Ct. Cust. Appls. 267, T. D. 35478; *Bonwit Teller & Co.* v. *United States*, 19 C. C. P. A. (Customs) 238, T. D. 45339.

In its decision, the trial court stated that it was impossible to tell from the record under what provisions of paragraph 1529 (a), *supra*, the merchandise was assessed, and that, therefore, no presumption of correctness attended the collector's classification. In support of that view, the court cited the case of *United States* v. *White Sulphur Springs Co.*, 21 C. C. P. A. (Customs) 203, T. D. 46728, wherein this court, among other things, said:

Where a paragraph of a tariff act makes provision for two or more distinctly different kinds of merchandise and the collector of customs specifically classifies an importation as one of those kinds, the legal presumption that such classification is correct attaches, but such presumption of correctness is limited to the specific classification made, and, in case it be found that the merchandise is not such specific kind, it may not be held that there is a legal presumption that it is some other kind which happens to be included in the same paragraph *but of which the appraiser gives no description and the collector makes no mention in his classification.* (Italics not quoted.)

The trial court further stated in its decision that there was no evidence in the case to establish that the merchandise was classified by the collector as being in part of braid; that, if it could be said to have been so assessed, the evidence in the case was sufficient to establish, at least *prima facie*, that the involved table covers were "not in any part of braid"; and that, as the merchandise was in chief value of silk, it was properly dutiable under paragraph 1211, *supra*.

It was stipulated by the parties on the trial below that the merchandise was in chief value of silk, and that it was not "embroideries."

On the trial below Mr. Gottfried, counsel for appellee, in stating the issues to be presented to the court, among other things, said:

With reference to the classification issue raised in the protest, the merchandise is so-called bridge covers which were classified under paragraph 1529–a, *because of this little strip of white elastic material on each corner of the table cover*. The contention made by the Government is *that the white elastic material on each corner of the cover is braid,* and that the article is in part of embroidery. *The importer, of course, contends it is not braid.* It is not a binding for the table cover, neither does it protect or bind the edges, *and that in any event the white elastic, even if it were braid, is of such negligible value it can be disregarded.*

* * * * * * *

I direct the court's attention to the fact that in this case while the merchandise was classified at 90 percent *for the reason just stated, the collector's answer apparently gives the reason as being embroidery.*

I offer to stipulate at this time that the merchandise is not embroideries, and that the collector's answer is in error.

Mr. Donohue. That stipulation is agreed to in so far as it concerns the statement that the merchandise is embroideries.

Mr. Gottfried. I have made that statement because a similar case was tried before the Customs Court, and because a similar return was made by the collector, *although a stipulation was entered into by counsel that the merchandise was braid the court disregarded it and held the stipulation was not binding on the court in view of the return made by the collector.* However, that case was taken to the Court of Customs and Patent Appeals, and the appellate court there held that the stipulation was binding on the court and the collector's answer was invalid. *In this case, we have a similar situation where the collector's reason for classifying the merchandise is in error.* [Italics ours.]

It is evident from the statements made by counsel for appellee and the testimony introduced by him, hereinafter set forth, that the cause was presented to the trial court by both parties upon the proposition that the merchandise was assessed for duty by the collector under paragraph 1529 (a), *supra*, as being in part of braid (counsel for appellee taking the position that the narrow strips of elastic material attached underneath the corners of the covers were not braid, and counsel for the Government insisting that they were), and that the sole purpose of counsel for appellee in introducing the testimony and Exhibit 1, which is representative of the involved table covers, was to establish that the merchandise was not in part of braid.

Decisions of collectors of customs classifying imported merchandise are presumed, as a matter of law, to be correct. In the event a

collector's classification is challenged by protest, the burden is upon the protestant to overcome that presumption by proper evidence.

In view of the fact that the appraiser's advisory classification of the merchandise at 90 per centum ad valorem under paragraph 1529 (a), *supra*, describes it as being in part of braid, and as there is no evidence to the contrary (the report of the collector being extra-official and not proper for consideration), "the record is sufficient to establish the fact that the merchandise was classified" by the collector in accordance with the appraiser's advisory classification. *United States* v. *Bullocks, Inc., supra.*

The collector having classified the merchandise as being in part of braid, it was incumbent upon appellee to overcome the presumed correctness of such classification. *United States* v. *Bullocks, Inc., supra.* Accordingly, the principles of law announced in the quoted excerpt from our decision in the case of *United States* v. *White Sulphur Springs Co., supra,* have no application to the issues in the case at bar.

Daniel J. Whelan, the only witness in the case, testified for appellee. He stated that he was employed by appellee as a buyer in the notion and toilet goods department; that he was familiar with merchandise of the character of that here involved, and had handled such merchandise, as well as braids of various kinds, for about thirty-five years in San Francisco, Los Angeles, and New York; that he had never bought or sold elastic material, such as that attached to the involved table covers, as braid, but had sold it as elastic; that braids were used "for trimmings, ornamentation on garments, dresses, etc. Practically, that is the entire use"; that the elastic strips do not ornament, bind, or trim the involved table covers, but serve a "purely utilitarian use;" that, in the United States, the common meaning of the term "braid" is the same as the commercial meaning; and that the narrow elastic strips here involved are not "braid," within his understanding of the common meaning of that term. On cross-examination he stated that there are braids which are not ornamental and are not used for ornamental purposes; that ordinary braids are not capable of being stretched; that elastic material, like that here involved, is made on braiding machines, and, although it was originally known as elastic braid, during the course of years it had become known merely as elastic; that there are many different kinds of braids known and sold under different names; that, in ordering braid, it is necessary to specify the particular type desired; that the mere fact that the white elastic material here involved was made on a braiding machine would not, in his opinion, make it braid; and that ornamental braid is ornamented after it has been woven.

It will be observed that, on direct examination, the witness testified that the involved elastic material was not within his understand-

ing of the common meaning of the term "braid." Apparently, he was then of opinion that that term was limited to such braid as was used for the purpose of ornamentation. However, on cross-examination he stated, as hereinbefore noted, that there are braids which are not used for ornamental purposes.

If the term "braid" includes both classes of braid, that is, that which is used for ornamental purposes and that which is not, we are at a loss to understand why the material here involved should be excluded from the common meaning of that term, unless it is because, although the witness did not so state, it is made in part of India rubber.

"Braid" is defined by the lexicographers as follows:

* * * A plait, band, or narrow fabric formed by intertwining or weaving together different strands. * * * A narrow fabric, as of wool, silk, linen, or strands of other material, variously used, as for binding, trimming, or other ornamentation, designs, outlines, etc., in lacework or crocheting, etc. * * * (Webster's New International Dictionary.)

A narrow flat tape or woven strip for binding the edges of fabrics or for ornamenting them. * * * Anything braided, plaited, or interwoven, as a fillet, or plaited hair. (Funk & Wagnalls New Standard Dictionary.)

Narrow elastic braids, not ornamented, composed of cotton and India rubber and silk and India rubber, used solely for utilitarian purposes, have been consistently held by the courts to be dutiable as "braids" under the tariff acts of 1897, 1909, 1913, and 1922. See *Calhoun, Robbins & Co.* v. *United States*, 8 Ct. Cust. Appls. 360, T. D. 37624; *J. Donat & Co. et al.* v. *United States*, T. D. 31000, 19 Treas. Dec. 1037; *Poirier & Lindeman Co.* v. *United States*, T. D. 36584, 31 Treas. Dec. 57.

The provisions for "braids" contained in paragraphs 358 and 1430, respectively of the tariff acts of 1913 and 1922 were substantially the same as the provision for "braids" in paragraph 1529 (a), *supra*.

In the case of *United States* v. *Bullocks, Inc.*, *supra*, attention was called to the decision of this court in the case of *Calhoun, Robbins & Co.* v. *United States*, *supra*, wherein it was held that certain "hat elastics and elastics for making sleeve and children's garters" were dutiable under the provisions of paragraph 358 of the tariff act of 1913 for "braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine, and not specially provided for," and to T. D. 46625, 64 Treas. Dec. 225, 226, paragraph 5 of which was quoted by the court, and to which the court made the following reference:

The statement above quoted from T. D. 46625 quite clearly indicates that the administrative practice under the Tariff Act of 1922, as well as the present act, was to classify articles such as those involved in the way they were classified here.

In the *Calhoun* case, *supra*, this court had under consideration hat, sleeve, and garter elastics used for utilitarian purposes, some of the elastics being composed of cotton and India rubber and others of silk and India rubber. The court called attention to the fact that, in the case of *Calhoun, Robbins & Co.* v. *United States*, T. D. 20554, 1 Treas. Dec. 119 (1899), elastic braids were held to be dutiable under the provision for "braids" in the tariff act of 1897; stated that elastic braids were assessed as "braids" under the tariff act of 1909, and that, there being nothing in the tariff act of 1913 to indicate a contrary congressional intent, the term "braids" in the quoted provisions of paragraph 358 of that act would be presumed to have been used in the sense in which it was employed in prior tariff acts; and, accordingly, held that the elastic articles there under consideration were dutiable under the provision for "braids," contained in paragraph 358, *supra*.

It is true, as argued by counsel for appellee, that, in its decision, the court referred to the fact that the cotton elastics were commercially known as "braids." However, it is clear that the decision was not based on *commercial designation*. There is nothing in that decision to indicate that the court thought that the commercial meaning of the term "braids" differed from its common meaning, nor was there any evidence of record tending to establish that the commercial meaning differed from the common meaning.

The only evidence in the instant case relative to the manufacture of elastic material like that here involved is that it is made on a "braiding machine," one of the machines named in the provision for "braids" contained in paragraph 1529 (a), *supra*.

We are unable to hold on the record before us that the presumption of correctness attending the collector's classification of the involved table covers under paragraph 1529 (a), *supra*, as being in part of braid has been overcome. Accordingly, we are constrained to disagree with the conclusion reached by the trial court.

The judgment is *reversed*.