(C. D. 339)

Associated Merchandising Corp. *v.* United States

United States Customs Court, Second Division

(Decided May 17, 1940)

*Barnes, Richardson & Colburn* (*Howard Carter* of counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges; Kincheloe, J., concurring in the conclusion

Tilson, Judge: This suit against the United States raises the question of the proper classification of certain imported merchandise and

seeks to recover certain money alleged to have been illegally exacted by reason of such classification. Duty was levied on the merchandise at 90 per centum under paragraph 1529 (a) of the Tariff Act of 1930, and the plaintiff claims the same to be properly dutiable at 40 per centum ad valorem under paragraph 923 of said act, as manufactures wholly or in chief value of cotton, not specially provided for.

The collector has furnished no indication of how the merchandise was classified by him, and we are therefore without any information from the person and the only person authorized by law to do so, as to how he classified the merchandise. However, we find on the invoice the following red-ink notations:

Petit point hand emb. ornaments–cotton c. v. 90% 1529 ABE.

These notations do not purport to be made by even the appraiser, but as the initials "ABE" would indicate, are made by the examiner. Although the Congress has consistently and with great caution and care, in passing legislation affecting the duties of the collectors, appraisers, and examiners, kept their duties and power separate and distinct, and has reposed in the collectors, and them alone, the duty of classifying imported merchandise, under the decisions of our appellate court this court must now accept as presumptively correct attempted classifications made by appraisers and examiners. *United States* v. *Bullocks, Inc.*, 24 C. C. P. A. 41, T. D. 48330, and *United States* v. *Bullocks, Inc.*, 25 C. C. P. A. 381 T. D. 49465. In this case, therefore, we accept the red-ink notations on the invoice by the examiner as the presumptively correct classification of the collector of the merchandise, as "Petit point hand emb. ornaments–cotton c. v.," under the authorities above cited, although we are not convinced that this holding is in accordance with the congressional intent in such cases.

In *National Hat Pin Co.* v. *United States*, 5 Ct. Cust. Appls. 435, T. D. 34971, at page 438, the appellate court held:

*It is the function of the collector to classify the merchandise* and determine the rate and amount of duty. *It is the function of the appraiser to determine its value,* and we have held upon full consideration that when the appraiser has once made his appraisement and returned the same to the collector he is without authority to recall and change the same. *United States* v. *Bennett* (2 Ct. Cust. Appls. 249; T. D. 31975). [Italics ours.]

At the trial of this case three official samples of the merchandise were admitted in evidence and marked Collective Exhibit 1. There was also admitted in evidence Collective Illustrative Exhibit 2, which, according to the testimony, indicates the manner in which these articles are mounted. Collective Illustrative Exhibit 3 was also admitted in evidence to show what was done with the merchandise after importation.

Referring to the merchandise on the invoices in this case, the witness testified that at the time it was imported "It was petit point inserts"; that there were rows of these inserts mounted on sheets, "six this way and six that way." Although immaterial to this decision, the witness testified that when these inserts were received, she counted them and then forwarded them to the compact company with instructions to cut out the inserts and mount them in the compacts, and that Collective Illustrative Exhibit 3 correctly represents the merchandise as it was subsequently received by her; that she had never seen Collective Exhibit 1 used for any purpose other than to produce an article like Collective Illustrative Exhibit 3; and that she had never seen a petit point design of the type here involved used on wearing apparel of any sort, including millinery. The witness further testified that if the background of Collective Illustrative Exhibit 3 were filled in, the color pink would not show through. On cross-examination the witness testified that the purpose of placing Collective Exhibit 1 on the back of Collective Illustrative Exhibit 3 was to ornament and beautify it.

On this record counsel for the plaintiff contends in his brief filed herein that the merchandise is not embroidered articles or fabrics and also that it is not ornaments or embroidered ornaments.

With the contention of counsel that the merchandise is not embroidered fabrics or articles we would be inclined to agree, but since in our view this is not necessary to a decision in this case, we express no opinion, other than to say that while it appears that the gauze or netting upon which the stitching was placed was an otherwise completed fabric, and when the stitching was placed thereon it was no longer a gauze or netting, but was thereby converted into an ornament.

The above view finds confirmation in the case of *United States* v. *Field & Co.*, 10 Ct. Cust. Appls. 183, T. D. 38550, at page 190, where the appellate court held as follows:

We think a distinction should be made between an article or fabric entirely finished, so far as its ultimate uses are concerned, like wearing apparel, handkerchiefs, tablecloths, or other fabrics or articles which are ready for use and capable of performing the function for which they were made, whether embroidered or not, and the tapestry canvas which is the basic canvas in this case. This foundation canvas is but one of the materials used in producing the finished article, and with it are imported the woolen yarns of quantity and color required to complete the article itself. It is not usable, and is not used in its original condition, for any of the purposes to which it will be appropriated when it is completed by the addition of needlework, and for those purposes it is not a finished article until the needlework has been applied thereto. * * *.

\* \* \* \* \* \* \*

To illustrate, wearing apparel, handkerchiefs, cloth of any kind, are still the same things after superimposed ornamentation is produced thereon by embroidery as they were before. They have not lost their original identity, but have been made more beautiful; while the foundation fabric of Exhibit 1 in this case, when

finished by the needlework, has become a different article altogether from what it was in its first estate; and although in one sense it may be spoken of as embroidered or an embroidered article, we think it is, nevertheless, for tariff purposes, not that, but is classifiable under paragraph 288 as claimed by importers.

While not squarely in point, the above holding finds confirmation in the more recent decision of the appellate court, in *United States* v. *Beyda Franco*, 22 C. C. P. A. 441, T. D. 47426.

Under the above-cited and quoted authorities we also agree with the contention of counsel that the merchandise does not consist of embroidered ornaments, but we are unable to agree with the contention that the merchandise is not ornaments. The merchandise was so classified by the collector, through the red-ink notations of the examiner, and there is little, if any, evidence in this record to contradict that classification.

Since, under paragraph 1529, the use to which merchandise may be put after importation can have no bearing upon its proper classification at the time of, and in the condition as imported, the fact that the witness had never seen the merchandise used for any purpose other than to produce an article like Collective Illustrative Exhibit 3, and had never seen a petit point design of the type here involved used on wearing apparel of any sort, is immaterial. Paragraph 1529 does not classify ornaments according to the use to which they may or may not be put after importation, but specifically provides that they shall be dutiable under said paragraph irrespective of the use to which they may be put.

In its brief filed herein counsel for the plaintiff contends that these articles, referring to the designs, are not ornaments because they are used to finish or complete the compact; without the petit point design the compact is unfinished and incomplete, and that it is also apparent that the petit point design serves a further utilitarian purpose in furnishing a rougher and less slippery surface and makes it possible for the compact to be held more comfortably, firmly, and securely.

These contentions are answered by the record wherein is found no evidence that these petit point designs are not ornaments because they are used to complete or finish the compact, or for any other reason. Neither is there any evidence that they serve any utilitarian purpose. If material in this case, it is noted that the compacts in evidence as illustrative exhibits have the petit point designs on only one side, leaving entirely barren the smooth, highly polished opposite side. As stated by counsel for the defendant in his brief filed herein, referring to the testimony bearing upon the above contention:

* * * there is no evidence in this record tending to prove, even in the slightest degree, (1) that the imported merchandise was used to finish or complete the compact; (2) that, without the so-called petit point design, the compact

would be unfinished or incomplete; (3) that the so-called petit point design serves a further utilitarian purpose in furnishing a rougher and less slippery surface, and makes it possible for the compact to be held more comfortably, firmly and securely.

But even if the evidence showed that the imported ornaments were used to finish or complete the compacts, that without the so-called petit point design the compacts would be unfinished or incomplete, and that the petit point designs serve the utilitarian purpose of making it possible for the compacts to be held more comfortably, firmly, and securely, it does not appear that this would affect the classification of these ornaments as imported. In said paragraph 1529 (a) ornaments are *eo nomine* provided for irrespective of "to whatever use applied."

Merchandise is classifiable in the condition in which imported. There is nothing in the language of paragraph 1529 which makes the classification of merchandise therein provided for contingent upon anything that may happen to it after importation. *Ringk & Co.* v. *United States*, 10 Ct. Cust. Appls. 107, T. D. 38372; *United States* v. *Hannevig.* 10 Ct. Cust. Appls. 124, T. D. 38384; *Heyliger & Raubitschek* v. *United States*, 11 Ct. Cust. Appls. 90, T. D. 38735.

On the evidence in this case we hold the merchandise to be dutiable at 90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, as ornaments, to whatever use applied, composed in chief value of yarns, threads, or filaments. All of the claims of the plaintiff are, therefore, overruled. Judgment will be rendered accordingly.

### CONCURRING OPINION

KINCHELOE, Judge: *Solely* by reason of the decisions of our appellate court in *United States* v. *Bullocks, Inc.*, 24 C. C. P. A. 41, T. D. 48330, and 25 C. C. P. A. 381, T. D. 49465, I am *compelled* to and do concur in the conclusion reached by my colleagues in this case.

However, on the other hand I heartily concur in the decision of our appellate court in *National Hat Pin Co.* v. *United States*, 5 Ct. Cust. Appls. 435, T. D. 34971. This, in my opinion, clearly and concisely defines the duties and powers of appraisers and collectors, respectively, in appraising and in classifying merchandise, and determining the rate and amount of duty. This opinion says, in part:

\* \* \* It is the function of the collector to *classify* the merchandise and determine the *rate* and *amount* of duty. It is the function of the appraiser to determine its *value*, and we have held upon full consideration that when the appraiser has once made his appraisement and returned the same to the collector he is without authority to recall and change the same. *United States* v. *Bennett* (2 Ct. Cust. Appls. 249; T. D. 31975). [Italics mine.]

\* \* \* \* \* \* \*

\* \* \* Nor is this all—the statute does not clothe the appraiser with *any* duty respecting the *classification* of the merchandise. [Italics mine.] His function relates to the ascertainment of its dutiable value, and although the customs regulations (see articles 1514 and 1515) require the appraiser, among other things, to describe the merchandise in such terms as will enable the collector to classify

it for duty, yet this is by the express terms of the said regulations for the purpose of *assisting* the collector, and is not conclusive in any way upon his classification nor the correctness thereof. The collector may or may not classify according to the appraiser's description. \* \* \*

While the duties of said officials were defined in said decision under the Tariff Act of 1909, yet, in my opinion, said definitions apply with equal force and effect under the Tariff Act of 1930.