CALHOUN, ROBBINS & CO. ET AL. *v.* UNITED STATES (No. 1880).[1]

1  CONSTRUCTION, PARAGRAPH 358, TARIFF ACT OF 1913—LEGISLATIVE SANCTION— "BRAIDS"—ELASTICS.

Elastics were held administratively and judicially to be braids under the tariff act of 1897. Congress presumably used the word braids in that sense in the tariff act of 1909 and in paragraph 358, tariff act of 1913.

2  CONSTRUCTION, PARAGRAPH 358, TARIFF ACT OF 1913—"YARNS, THREADS, OR FILAMENTS"—RUBBER THREADS.

The rubber threads which form the framework or foundation about which the cotton or silk threads are worked into elastic braids are within the meaning of the expression "yarns, threads, or filaments," paragraph 358, tariff act of 1913.—United States *v.* Veit (8 Ct. Cust. Appls. 290 ; T. D. 37540) distinguished.

3. CONSTRUCTION—RELATIVE SPECIFICITY—NOT OTHERWISE SPECIALLY PROVIDED FOR CLAUSE.

The cases in which an interpretation of two conflicting paragraphs of a tariff act may be controlled by the not otherwise provided for clause are restricted to those in which the two paragraphs apply with equal specificity to the article in question.

4. HAT ELASTICS OF COTTON AND INDIA RUBBER—SLEEVE AND GARTER ELASTICS OF SILK AND INDIA RUBBER.

The decision of the Board of United States General Appraisers overruling a protest against the collector's classification of cotton and india rubber hat elastics and silk and india rubber sleeve and garter elastics as braids, under paragraph 358, tariff act of 1913, claiming the cotton goods to be classifiable as "fabrics with fast edges not exceeding twelve inches in width  *  *  *  of cotton  *  *  *  and india rubber," under paragraph 262, and the silk goods to be dutiable as "webbings  *  *  *  of which silk and india rubber are the component materials of chief value," under paragraph 316, is affirmed.

------

[1] T. D. 37624 (34 Treas. Dec., 397).

United States Court of Customs Appeals, April 30, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8093 (T. D. 37353).
[Affirmed.]

*Curie, Smith & Maxwell (Thomas M. Lane* of counsel) for appellants.
*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

[Oral argument Apr. 18, 1918, by Mr. Lane and Mr. Baldwin ]

Before MONTGOMERY, SMITH, BARBER, De VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This case involves two classes of merchandise. One class is composed of cotton and india rubber, the other of silk and india rubber. Two distinct issues are presented. Both classes were assessed for duty by the collector as braids at 60 per cent under that part of paragraph 358 of the tariff act of 1913 which reads:

\* \* \* Braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine, and not specially provided for \* \* \*. .

The cotton and india rubber class is claimed to be dutiable at 25 per cent ad valorem under paragraph 262, which reads in part as follows:

Bandings, belts, beltings, bindings, bone casings, cords, tassels, cords and tassels, garters, tire fabric or fabric suitable for use in pneumatic tires, suspenders and braces, and fabrics with fast edges not exceeding twelve inches in width, all of the foregoing made of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, or of cotton or other vegetable fiber and india rubber, and not embroidered by hand or machinery.

The silk and india rubber class is claimed to be dutiable under paragraph 316 as "webbings \* \* \* of which silk and india rubber are the component materials of chief value."

It is clear that the specific term "braids" is broad enough to cover the articles here in question, which consist of hat elastics and elastics for making sleeve and children's garters. This question was considered by the Board of General Appraisers in T. D. 20554, decided in 1899, under the tariff act of 1897, and elastic braids of this kind were held to be dutiable as braids within the meaning of the tariff act, which case was affirmed in Calhoun *v.* United States (122 Fed., 894).

Under the act of 1909 goods like those in question here were assessed for duty as braids and classified as braids. The presumption, therefore, would be that in reenacting this statute the word "braids" was used in the sense in which it had been employed in the prior acts, and unless this presumption is overcome by a consideration of the language employed in the present paragraph which in some way modifies or qualifies the meaning of the word "braid" as it had been previously interpreted, or by some other provision of the present

act more specific than braids, it would follow that the merchandise should still be held dutiable as braid.

It should be further stated that the fact is shown by the present record that these particular goods are known commercially as braids.

We have therefore to consider whether there is such a limitation upon this term by the context of the paragraph as to exclude braids of this character.

The contention is that the articles provided for in paragraph 358 are articles which are made up of yarns, threads, or filaments, and that a braid which is not so composed is therefore not within the intent of the provision, and this presents the question, therefore, as to whether this braid is composed of yarns, threads, or filaments.

The braid is precisely like that involved in the case of Calhoun, Robbins & Co. (T. D. 20554), in which case it was stated by a witness, whose testimony was accepted by the board, "that these rubber threads form merely the framework or foundation about which the cotton or silk threads, as the case may be, are worked into the braid, which would be a perfect braid without these rubber threads, which are introduced simply to make the braid elastic, and for no other purpose."

This describes the articles here in question precisely. It will be noted that the elastic is there referred to as a thread and treated as a part of the fabric, which it clearly was, and that the whole was held to be a braid.

The same ruling was made as to the present tariff law by the board in T. D. 34887, which the present case followed.

It is contended that this court, in the case of United States v. Veit (8 Ct. Cust. Appls., 290; T. D. 37540), laid down a rule which is inconsistent with the present contention that the rubber core or thread here employed is a yarn, thread, or filament within the meaning of paragraph 358. We think this is a misconception of what was held in that case. The articles there in question were made up of articles in which had been employed lame or lahn, which is produced by drawing round tinsel wire through metal rollers, whereby it is flattened into various widths. The lame there in question was used by sewing it in folded lengths by means of cotton threads upon one side of narrow strips of cotton netting. It was not interwoven with the fabric in any way.

The other material involved was bullion, which consisted of the lame or lahn twisted into short lengths and hung to a trimming as pendants, in which was inserted for protection or strength a cotton core. That was in no sense a part of the fabric or interwoven as a yarn or thread or filament composing cloth or a fabric.

It was said in the case:

We are therefore convinced that these terms (referring to "yarns, threads, or filaments") were intended to cover only such materials as are generally known as materials for knitting, weaving, or sewing, and inasmuch as the present lame or lahn and bullion are incapable of such use, the goods of which they compose the chief value do not answer to the qualifications of the paragraph.

It might have been clearer had we added to the words "knitting, weaving, or sewing," "or similar process," but it is clearly enough understood when it is seen that the purpose was to differentiate between a material which in no sense became a part of the fabric and one which was used in preparing the fabric. Even the words used, however, indicate goods like the present, for braiding is one method of weaving, although technically a different process.

The term "yarns, threads, or filaments" is broad enough to cover the material here in question.

Standard Dictionary:

*Yarn.*—1. Any fibrous material from a natural source, whether animal, mineral, or vegetable, that is made for use in weaving, knitting, embroidery, etc.; spun fiber, as wool, cotton, flax, silk, or jute; loosely, thread; also a quantity of such spun material.

*Thread.*—1. A slender cord composed of two or more yarns or filaments, as of flax, cotton, silk, or other fibrous substance, twisted together.

*Filament.*—1. A fine thread, fiber, or fibril; any threadlike structure or appendage.

Webster's Dictionary:

*Yarn.*—1. Spun wool; woolen thread; also thread of other material, as of cotton, flax, hemp, or silk; material spun and prepared for use in weaving, knitting, manufacturing sewing thread, or the like. 2. Any of the threads forming the strand of a rope.

*Thread.*—1. A very small twist of flax, wool, cotton, silk, or other fibrous substance, drawn out to some length; a compound cord of two or more single yarns doubled or joined together and twisted; often specif., cotton thread or, in some places, linen.

*Filament.*—A thread or threadlike object, process, or appendage; a separate fiber.

Century Dictionary:

*Yarn.*—1. Originally thread of any kind spun from natural fibers, vegetable or animal, or even mineral; now more usually thread prepared for weaving, as distinguished from sewing thread of any sort. The term is also applied to stout woolen thread used for knitting, etc.

*Thread.*—1. A twisted filament of a fibrous substance, as cotton, flax, silk, or wool, spun out to considerable length.

*Filament.*—A fine untwisted thread; a separate fiber or fibril of any vegetable or animal tissue or product, natural or artificial, or of a fibrous mineral; as a filament of silk, wool, cobweb, or asbestos.

Indeed it is difficult to discuss the article in question known as elastics without giving to the material "rubber" employed a term which would bring it within the paragraph in question. For instance, the Standard Dictionary defines the noun "elastic" as "* * * webbing made elastic by india-rubber threads woven therein * * *." The Oxford Dictionary gives a definition of "elastic web" as "cloth woven with india-rubber threads so as to stretch."

So as to cotton and india-rubber goods, we think it should be held that they are described eo nomine in paragraph 358.

It is urged, however, that paragraph 262, while not describing the goods eo nomine, points to such goods as these with unerring certainty, and as that paragraph contains no exception of goods not otherwise specially provided for, whereas such a provision appears in paragraph 358, the latter should give way to the former.

The cases in which an interpretation of two conflicting paragraphs may be controlled by the not otherwise specially provided for provision are restricted to those in which the two paragraphs apply with equal specificity to the article in question. While the contention of the importer is of great force in this case, it would be of greater weight were it not for the fact that there is a class of braids which are otherwise provided for in terms by paragraph 335, and the provision in question may have been inserted to avoid conflict between paragraphs 358 and 335, as these are the only paragraphs in the act specially providing for braids.

Nor do we overlook the force of the contention that a restricted interpretation should be given to the words of this paragraph 358 by reason of the elimination from that paragraph of a corresponding provision for articles in part of rubber contained in the act of 1909. But we think this consideration not sufficient to overcome the language employed and the eo nomine designation of braids when coupled with the tariff history of the word and the proof of commercial designation.

This leaves for consideration the silk fabric. The board found in this case as a fact that the proof of commercial designation was not sufficient to overcome the presumption of correctness attaching to the collector's classification. A careful examination of the record has convinced us that we would not be justified in overturning the decision of the board upon this question of fact. It is true that upon direct examination the witness Albrecht, for instance, testified that the goods fell within the term "elastic webbing" as understood by him. But on cross-examination he testified that he understood the word "webbing" to mean loom-woven goods. The exact answer is:

Q. The term "webbing" as you have heard it used has generally included goods that were made on a loom, hasn't it?—A. Loom-woven goods. I don't know anything about the article in question.

Q. You don't know whether a distinction is made between webbings and braids with reference to the kind of machine on which they are made?—A. No, sir.

Q. Is there any distinction made between them so far as you know as regards the way the threads run, whether the threads run in a braided direction in the way a girl braids her hair or whether they are warp and weft?—A. I don't know.

In view of this discrepancy and of the other testimony in the case, which has had careful consideration, we are not prepared to say that the board was in error in reaching the conclusion it did upon the question of fact.

The decision of the board is *affirmed*.