(C. D. 1015)

Varsity Watch Co. *v.* United States

United States Customs Court, Second Division

(Decided June 27, 1946)

*Lane, Young & Fox* (*William H. Fox* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

*Herbert S. Greenberg, amicus curiae.*

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: The problem confronting us here is whether certain watchcases of base metal, the bezels of which, before importation, were electroplated with a solution containing a small quantity of gold, are, in a tariff sense, watchcases of base metal "not containing gold," as claimed by the plaintiff, or are watchcases "in part of gold," as claimed by the Government.

The collector of customs classified the importation as watchcases "in part of gold" pursuant to the terms of paragraph 367 (f) (2) of the Tariff Act of 1930, as modified by the trade agreement between the United States and Switzerland, effective February 15, 1936, 69 Treas. Dec. 74, T. D. 48093, and assessed duty thereon at the rate of 40 cents each plus 30 per centum ad valorem.

Plaintiff relies upon the allegation in its protest that these watchcases should have been classified in accordance with the provision in paragraph 367 (f) (4) of said act, as modified by the Swiss Trade Agreement, *supra*, as watchcases of base metal "not containing gold," and as such dutiable at the rate of 10 cents each plus 25 per centum ad valorem.

It is alternatively claimed by the plaintiff, although not seriously pressed, that the importation should have been classified as articles or wares not specially provided for, composed wholly or in chief value of metal plated with gold, as provided in paragraph 397 of said act, and dutiable accordingly at the rate of 65 per centum ad valorem.

Inasmuch as paragraph 367 of the Tariff Act of 1930 is a very long one, we shall, for convenience, set forth so much of the statute, as well as the modification thereof in the Swiss Trade Agreement, *supra*, as we deem pertinent to this discussion:

PAR. 367 (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments * * *

(f) All cases, containers, or housings, designed or suitable for the enclosure of any of the foregoing movements, mechanisms, devices, or instruments, whether or not containing such movements, mechanisms, devices, or instruments, and whether finished or unfinished, complete or incomplete, except such containers as are used for shipping purposes only:

(1) If made of gold or platinum, 75 cents each and 45 per centum ad valorem;

(2) if in part of gold, silver, or platinum, or wholly of silver, 40 cents each and 45 per centum ad valorem;

(3) if set with precious, semiprecious, or imitation precious, or imitation semiprecious stones, or if prepared for the setting of such stones, 40 cents each and 45 per centum ad valorem;

(4) if of base metal (and not containing gold, silver, or platinum), 20 cents each and 45 per centum ad valorem;

(5) any of the foregoing cases, containers, or housings, if enameled, shall be subject to an additional duty of 15 per centum ad valorem.

The pertinent modification of said paragraph 367, as set forth in the schedule accompanying the trade agreement with Switzerland, *supra*, reads:

| Tariff Act of 1930, paragraph | Description of articles | Rate of duty |
|---|---|---|
| 367 (f)------- | All cases, containers, or housings, designed or suitable for the enclosure of any of the movements, mechanisms, devices, or instruments provided for in paragraph 367, whether or not containing such movements, mechanisms, devices, or instruments, and whether finished or unfinished, complete or incomplete, except such containers as are used for shipping purposes only: | |
| | (1) If made of gold or platinum--------------------------- | 75¢ each and 30% ad val. |
| | (2) If in part of gold, silver, or platinum, or wholly of silver. | 40¢ each and 30% ad val. |
| | (3) If set with precious, semiprecious, or imitation precious, or imitation semiprecious stones, or if prepared for the setting of such stones. | 40¢ each and 30% ad val. |
| | (4) If of base metal (and not containing gold, silver, or platinum). | 10¢ each and 25% ad val. |

It will be observed that the trade agreement shows no change in language from that employed in subparagraph (f) of paragraph 367, *supra*, but merely indicates certain reductions in the original statutory rates of duty imposed on watchcases and so forth.

At the trial considerable testimony was introduced, much of which, in view of the conclusion we have reached, is of little aid to the court in arriving at a determination of the question at issue. The controversy is materially simplified for the reason that certain salient facts noted below are not in dispute.

It is conceded that the watchcases have been coated with a solution containing gold by the process of electroplating, and it is not disputed that the amount of gold applied to each case is relatively very slight both in value and in quantity. Since the amount of gold present in the imported watchcases is not due to any adventitious circumstance, but was deliberately introduced for a practical purpose, we regard it of little or no consequence that the amount of gold used is relatively small in comparison with the amount of base metal in the cases. Consequently, as we view it, this is not an instance where recourse should be had to the rule *de mimimis non curat lex*.

Much time and effort have been devoted by plaintiff in its brief to a discussion of fair trade practice rules and regulations purporting to govern certain activities of the watchcase industry. It appears, however, that such regulations did not develop beyond the stage of "recommendations," and hence never became effective or binding.

It is fairly obvious from an examination of the provisions of law above quoted with relation to the classification of watchcases, that a clear purpose is manifested by Congress to embrace all watchcases

within the scope of paragraph 367, *supra*. The provisions thereof are systematically arranged to impose the highest rate of duty on those cases which are "made of" gold or platinum; a lower rate on those "in part of" gold, silver, or platinum—or wholly of silver; and the lowest rate on cases of base metal "not containing" gold, silver, or platinum.

Early in the course of the trial, counsel for plaintiff made the following statement of his case:

In this case I understand that there is a plating or coating, which contains an insignificant amount of gold on the top part, or so-called bezel of the watchcase. We contend that that amount of gold is so minute that for tariff purposes it is a base metal case and it should be assessed accordingly.

We contend further that the provision for watchcases in part of gold was enacted by the Congress and by the Trade Agreement negotiators to cover a class of cases which in trade and commerce are regarded as in part of gold. That is, that the word "gold" has a meaning conveyed in commerce different from its common meaning, the common meaning of the term covering practically everything from the pure metal down through and including alloys, gilding, gold washes and color, imitations of gold, and so forth.

We claim that in the wholesale watchcase industry and among the people who deal in watch movements encased in watchcases the word "gold" has a specific, definite, uniform meaning throughout the United States, and that the meaning of that term requires the gold to be of a definite quality, of a minimum quantity, and that the character of the case, whether wholly of gold or partly of gold, must be designated on the case by recognized markings.

These contentions will be discussed, *infra*.

While it is true, as contended by the plaintiff in its brief, that tariff acts are ordinarily written to conform to some existing course of business, nevertheless, it is equally true that in the construction of statutes, Congress is presumed to have used language in the light of its known interpretation by the courts. The terms "made of," "in part of," and "containing," as they appear in paragraph 367 (f) (1), (2), and (4), respectively, are not words of art which require recourse to scientific, commercial, or expert proof to ascertain their meaning. On the contrary, their meaning is well understood and well defined. They have been the subject of frequent interpretation, and, depending upon the context in which they are employed, their connotation is clear.

While we are not directly concerned here with the words "made of" as used in paragraph 367 (f) (1), we shall, nevertheless, consider them in their bearing upon the related provisions in the same paragraph which are in issue herein.

In *Steinhardt & Bro.* v. *United States*, 8 Ct. Cust. Appls. 372, T. D. 37629, the court was concerned with the question, among others, whether the words "made of" as used in paragraph 262 of the Tariff Act of 1913 should be construed as meaning made "*wholly of*" or

whether they also include articles made "in *chief value* of." [Italics quoted.] In answering the question the court said:

> The rule is well settled that such words as "made of" may be read to mean wholly of only, or, to include both wholly and in chief value of. The guide to proper construction must be found in the context. Kenyon Co. *v.* United States (4 Ct. Cust. Appls., 344; T. D. 33529); Blumenthal & Co. et al. *v.* United States (5 Ct. Cust. Appls., 327; T. D. 34529).

In *Vantine & Co.* v. *United States*, 3 Ct. Cust. Appls. 488, T. D. 33124, the court stated:

> The general rule appears to be well settled that when a tariff statute provides for duty upon an article of specified material, without declaring to what extent it must be composed of that material, it is at least confined to merchandise of which the specified material is that of chief value or is the predominant one therein. Arthur *v.* Butterfield (125 U. S., 70), *In re* Wise (93 Fed. Rep., 443), Drew *v.* Grinnell (115 U. S., 477), Schiff *v.* United States (99 Fed. Rep., 555), Robertson *v.* Edelhoff (91 Fed. Rep., 642).

Note also *United States* v. *Linen Thread Co.*, 13 Ct. Cust. Appls. 359, T. D. 41257, and cases cited therein.

In *May Co. et al.* v. *United States*, 25 C. C. P. A. (Customs) 227, T. D. 49336, the court said:

> It is clear from the record that the cotton cuffs of the gloves which comprise the woven fabric portion thereof constitute the chief value of the gloves, and appellants' contention is that under the authorities the phrase "made of" in paragraph 915 is to be interpreted not as though it read "made wholly of" but as though it read "made in chief value of." In other words, it is contended that the paragraph does not require that the gloves be made wholly of woven cotton fabric, but that it is sufficient if that portion of them which constitutes their chief value be so made.
>
> Such was the ruling of the Bureau of Customs, as expressed in T. D. 46473 (63 Treas. Dec. 1100, 1101), discussing "Gloves, cotton, of two kinds of fabrics," where it was said *inter alia:*
>
>> The term "made of" in paragraph 915 is not to be construed as "made wholly of," but, in accordance with the general rule as "made in chief value of."
>
> The foregoing ruling is, in principle, in harmony with a long line of decisions of this court, among which may be cited, *Kenyon Co.* v. *United States*, 4 Ct. Cust. Appls. 344, T. D. 33529; *Hawley & Letzerich* v. *United States*, 6 Ct. Cust. Appls. 45, T. D. 35322; *Hensel, Bruckmann & Lorbacher* v. *United States*, 6 Ct. Cust. Appls. 162, T. D. 35434; *United States* v. *Ascher & Co.*, 11 Ct. Cust. Appls. 453, T. D. 39532; *United States* v. *Linen Thread Co.*, 13 Ct. Cust. Appls. 359, T. D. 41257.

The philosophy of the cases discussed above, when applied to the context of said paragraph 367 (f) (1), suggests the application thereto of the rule enunciated in the *Steinhardt* case, *supra*, that—

> * * * such words as "made of" may be read to mean wholly of only * * *

and that—

> * * * The guide to proper construction must be found in the context.

Hence, in the light of their context, and of the governing decisions in the premises, it would seem that the words "made of gold," as used in said paragraph 367 (f) (1) should be construed as including within their scope watchcases composed wholly or substantially wholly of gold.

This brings us to a consideration of the next provision with which we are directly concerned; namely, that covering watchcases "in part of gold" in said paragraph 367 (f) (2). This classification we believe was intended to describe base metal watchcases in which gold is present either structurally or as a result of plating or other processes, and that this is true whether or not the gold is very small in quantity or value. We can conceive that there must be many instances where the amount of this precious metal is minute in quantity. But even if Congress had used more emphatic language in paragraph 367 (f) (2), as, for instance "in part of gold, however small," it would have added nothing to the real meaning and significance of the phrase. It will be recalled that in *United States* v. *American Shipping Co.*, 15 Ct. Cust. Appls. 249, T. D. 42261, and in *United States* v. *Tan*, id. 252, T. D. 42262, the words "however small" following the words "composed in any part" were held to add nothing thereto in determining the relative specificity of two competing provisions.

In determining the scope of the words "in part of gold" in said paragraph 367 (f) (2), we believe that the applicable rule is reflected in the parenthetical words "(and not containing gold, silver, or platinum)" in subdivision (f) (4) of the same paragraph. This must be true since both provisions, so far as material here, cover base metal watchcases, the former those which contain or are in part of gold and the latter those which do not contain gold. If the presence of gold is the reason for excluding a base metal watchcase from (f) (4), then by the very same token the article must naturally fall into (f) (2) as a watchcase of base metal in part of gold.

Plaintiff seeks to avoid this very simple interpretation of the intent of the lawmakers by urging that the word "gold" as used in said subparagraph (f) should not be given its common and ordinary meaning. As stated in its very elaborate and exhaustive brief:

* . * * plaintiff claims that the context of subparagraph 367 (f) (2), when read in connection with subparagraphs 367 (f) (1) and (f) (4), indicates a legislative intention to include in (f) (2) only cases made in part of sheets or plates of gold metal, or in part of sheets or plates of gold metal alloys of the element gold, and that said subparagraph was not intended to include cases made entirely of base metal, the whole or a part of which cases have been immersed in a chemical solution, in which a salt of the element gold, or gold chloride, has been chemically combined with certain acids to form gold cyanide, for the purpose of changing the color either of the base metal cases or of a part thereof by the application of a thin colored plating through the process known as electroplating.

In other words that while subparagraphs 367 (f) (1) (2) and (4) contain express provisions covering watch cases made of gold, or in part of gold, or not containing gold, they do. not contain any express provision including or excluding cases that have been *plated* or *colored* with gold. Hence, while there does not appear to be any 'ambiguity in the language found in said subparagraphs, and while the term gold in the sense used therein would appear to mean gold metal sheets or plates, and not *gold plating* or *coloring*, which is a chemical solution, a serious question arises concerning the meaning of the term gold as used therein, by reason of the Collector's action in classifying base metal electroplated gold colored or plated cases, as cases in part of gold.

Not only does plaintiff insist that the provision for watchcases "in part of gold" does not contemplate those made of base metal plated with gold by electrolysis or other process, but that it also excludes those of base metal covered with sheet or plate gold metal under 10 carats in fineness and less than 1½/1000 of one inch in thickness at its thinnest part. It is urged that this interpretation will reflect the congressional purpose to legislate in harmony with certain trade practices which are alleged to have prevailed at the time of the enactment of the Tariff Act of 1930 and on and prior to the effective date of the trade agreement with Switzerland, *supra*.

Plaintiff, in its brief filed herein, makes this further observation:

In any event, and regardless of trade practice, or the form in which gold may be present in the composition of a watch case, we claim that for a watch case to be dutiable as in part of gold there must be present in the make-up of the case at least sufficient gold to support a finding that it is in part of gold for tariff purposes. Sufficient gold under such circumstances reasonably should be at least some substantial amount of gold that would for all practical purposes lead to a logical conclusion that the case is in part of gold. * * *

Of course, here, as in all other cases, the will of the lawmakers is the law and, as plaintiff states in its brief regarding the pertinent provisions here under consideration—

* * * The legislative intent may be ascertained from the language of the provisions themselves if they are free from ambiguity and doubt * * *

We must confess that we are unable to discover any ambiguity and doubt in the language used in paragraph 367 (f) (2) and (f) (4). If gold is present therein, a base metal watchcase is *ipso facto* excluded from (f) (4) and is relegated for tariff classification to (f) (2). There is nothing in the phraseology of the two provisions which calls for the application of any strained or unnatural construction to ascertain the congressional will in the premises. For instance, if it were the legislative purpose to include in (f) (4) all base metal watchcases, whether or not plated with gold, is it reasonable to believe that such a result was effectuated by employing the parenthetical words found in that provision "(and not containing gold * * *)." As we read that expression it must have precisely the opposite effect. Those words

definitely limit the scope of the provision to base metal watchcases which contain *no* gold, and they leave no doubt whatever of that purpose. It is difficult to conceive how they can be construed to have any reference to the form, quality, or amount of gold that may be present in the watchcase. Indeed, to so interpret them would at once raise the question as to what would be the minimum quantity and quality of the precious metal which may be present and still justify classifying the case as one "not containing gold." In our view, so long as the case contains some gold, it would belie the fact to say that it contained no gold.

In *N. Shure Co.* v. *United States,* 63 Treas. Dec. 1306, Abstract 23111, this court held certain cloisonné ware plated with a small amount of gold not to be classifiable as gold-plated articles, presuming to apply the principles enunciated in *Saji & Kariya Co. et al.* v. *United States,* 9 Ct. Cust. Appls. 78, T. D. 37945. On appeal, however, in *United States* v. *N. Shure Co.,* 21 C. C. P. A. (Customs) 296, T. D. 46818, our appellate court reversed our judgment, and, after quoting from the *Saji & Kariya* case, *supra,* said:

It will be noted, from a consideration of the case cited, that no consideration was given there to the question here involved, namely, how much gold must a plating contain in order to be gold plating. It will be observed the statute which we have here under consideration, and under which the imported articles were classified, provides that if the articles or wares imported are plated with gold, they shall be dutiable under said paragraph 397. *It is sufficient, for the purposes of that statute, if the plating is a gold plating. It may be thin, or it may be heavy. If it is a gold plating, that is all that the law requires.* * * * *If the legislative body had desired to define what amount of gold should be required to constitute such a plating, we have no doubt it would have done so.* Having failed to do this, the only inquiry is, Is it a gold plating?

The appellee argues, and this argument evidently impressed the trial court, *that because it was necessary to use a microscope to detect the gold in the plating, it ought not to be considered a gold plating. However, this would also be true, so far as we are advised, of any plating which resembled gold in its color and appearance.* * * * [Italics supplied.]

Obviously it would not have been correct to say that the gold plating on the cloisonné ware contained no gold because of the very minute quantity of that precious metal contained therein. The appellate court deemed the gold content sufficient to warrant classifying the articles as having been gold-plated for tariff purposes. Evidently, then, it will not do to make the amount of gold contained in a given article the determinative test of its dutiable status. That would be too haphazard a method of procedure for the guidance of classifying officers, because the gold content might well vary in every importation. For example, the decision just cited was rendered some 18 years after our ruling in *J. J. Gavin & Co.* v. *United States,* 29 Treas. Dec. 258, T. D. 35721. In that case, this court

(then the Board of General Appraisers) had before it for classification under the Tariff Act of 1913 certain articles which consisted of—

> * * * door knobs, handles, door plates, and like hardware fixtures, the brass basic metal of which is highly ornamented with scroll work and the entire surface of the articles then covered with a coating of pure gold * * *

by the mercurial amalgam fire process, one of the many methods commercially employed in plating base metals with gold. In the course of our opinion, we said:

> * * * That the mercurial amalgam fire process happens to be one of the oldest known methods of plating, and hence to a large extent has been superseded by more recently discovered commercial plating processes; or that it is more expensive to apply and produces results which are considered more permanent than any other known plating process, in that it causes the precious metal to actually permeate the surface of the base metal thus effecting a physical combination of the two metals, in no sense alters the fact that articles so treated are known and recognized as plated articles within the common and ordinary meaning as well as within the commercial and judicial interpretation of that term. It is the plated effect or finish on the surface of the articles in question which determines their dutiable status, and not the particular method by which the plating was applied or produced.

We then pointed out that—

> In Tuska v. United States (5 Ct. Cust. Appls., 506; T. D. 35153, which affirmed the board's ruling in G. A. 7587; T. D. 34651), the United States Court of Customs Appeals held that the term "plated with gold or silver," when used without limitation, signifies that the given articles are coated with gold or silver by any one of the several known processes which are employed to cover or coat such articles with a layer of gold or silver. It signifies a final condition rather than the process by which the condition was produced.

In expressing our conclusion we said:

> Inasmuch, therefore, as the articles in question are composed in chief value of brass, but plated with gold or silver, as the case may be, they are expressly excluded from the class of articles dutiable at 20 per cent ad valorem under the provision in the last part of paragraph 167, which fact leaves them properly dutiable at 50 per cent under the provision in said paragraph for "articles or wares plated with gold or silver," and we so hold.

Logically, it would seem to follow that if the attitude assumed by the plaintiff herein be sound, the imported watchcases would be classifiable under paragraph 367 (f) (4) as base metal cases not containing gold, even if the entire surface thereof were covered with a coating of pure gold applied thereto by a process which caused "the precious metal to actually permeate the surface of the base metal thus effecting a physical combination of the two metals," as occurred in the *Gavin* case, *supra*.

It may be of interest to quote here somewhat at length what our appellate court said in *Tuska, Son & Co.* v. *United States*, 5 Ct. Cust. Appls. 506, T. D. 35153. It was there passing upon trays, boxes,

picture frames, and other articles composed of antimony covered with a thin film or coating of gold or silver. The articles were classified under the Tariff Act of 1913 as either gold- or silver-plated, and were claimed to be dutiable under said act as unplated articles. Of the condition of the importation the court said:

\* \* \* the articles in question are composed of antimony and are covered with a thin coating of gold or silver. It appears from the testimony that this coating was superimposed upon the articles by means of a process of chemical deposition. The articles were first formed of antimony; they were then immersed in a solution of copper through which an electric current was circuited, by which means they were electroplated with a thin film of copper. They were next either dipped in or washed with a solution composed of cyanide of potassium, water, and silver or gold. This was done without the intervention of an added electric current. As a result of the dipping or washing process the articles became coated with a thin layer of silver or gold; they were then treated to a coating of varnish. This process, which apparently depends upon chemical reaction alone, produces but a cheap and imperfect covering of the underlying article, graduated, however, by the strength of the solution and the period of immersion. According to the testimony a heavier and more durable coating may be produced by immersing the given article in a solution like that above described and permitting it to remain there a short time while an electric current is conducted through the solution. This results in an electrical decomposition of the solution and a consequent deposition of the one metal upon the other in greater volume and with a more permanent union, although in this case also the thickness of the coating depends to some extent upon the strength of the solution and the period of immersion. This latter process is the one now commonly adopted in the manufacture of substantial and durable plated ware.

In stating the importers' view of the law, the court observed:

\* \* \* The importers contend that the term "plated with gold or silver," as used in paragraph 167, should be construed with reference to the foregoing facts and that a proper construction would exclude from its purview the cheaper and thinner coating which is produced by chemical deposition alone.

adding that—

The record contains some testimony concerning a trade usage of the terms in question, but no peculiar commercial use thereof was established. The case therefore stands upon the common and usual signification of the words "plated with gold or silver," and the following authorities will assist in ascertaining this common meaning:

After quoting at considerable length from 10 authoritative works defining plating in all its phases, the court said:

According to the foregoing authorities, which give expression to the common knowledge, the terms "plated with gold or silver" when used without limitation signify that the given articles are coated with gold or silver by any one of the several known processes which are employed to cover or coat such articles with a layer of gold or silver. The terms therefore signify the final condition of the articles in question rather than the process which has produced that condition. Bloomingdale Bros. v. United States (3 Ct. Cust. Appls., 204; T. D. 32530).

And so in the case at bar, we are concerned with the condition of watchcases as imported "rather than the process which has produced that condition."

Incidentally, the court, in the *Tuska* case, *supra*, also referred to the further contention of the importers that the term "plated" as used in said paragraph 167, should receive the same construction as that given the same word in the jewelry paragraph (356) of that act. In the latter paragraph the expression used was "washed, covered, or plated," and it also appeared in the jewelry paragraphs of previous tariff acts. It was argued that Congress had thereby differentiated between the condition of plated metals and those merely washed or covered with another metal, the former being a more substantial and durable condition than that produced by a washing or similar covering process. The court said:

It seems, however, more reasonable to conclude that in paragraph 356 Congress used the words "washed" and "covered," in conjunction with the word "plated," out of abundance of caution, and not with the intention of fixing a limited meaning upon that last term, such as should obtain throughout the entire act. The words "washed" and "covered" of themselves suggest this conclusion, because those terms can hardly apply to classes which are exclusive of one another.

While the cases above discussed relating to plated articles do not present a perfect analogy to the present case, nevertheless, the conclusions there reached exert a compelling force in disclosing the judicial attitude to be assumed in interpreting the word "gold."

Moreover, as indicated earlier in this opinion, plaintiff insists, as a condition precedent to classification under said paragraph 367 (f) (2), that the gold applied to the watchcase must be in the form of a sheet or plate of that metal of not less than 10 carats in fineness and not under 1½/1000 of one inch in thickness at the thinnest part, and that otherwise it is not gold at all within the meaning of said paragraph, or for that matter within the contemplation of the entire tariff act or of the trade agreement with Switzerland, *supra*.

Surely, the word "gold," as used by the lawmakers, was never intended to be restricted to such a narrow or limited meaning. At least, there is nothing in the language or in the context of said paragraph 367 (f) to indicate the slightest intention that the term should receive an interpretation different from that applied to it when used elsewhere in the tariff act. Some definitions of the word "gold" follow:

Funk and Wagnalls New Standard Dictionary (1942):

**n. 1.** A metallic element having a characteristic yellow color, very heavy, very soft, and the most ductile and most malleable of metals: extensively used for coinage and for jewelry.

Webster's New International Dictionary (1939):

**1.** A metallic element of characteristic yellow color, the most precious metal used as a common commercial medium of exchange. \* \* \* It is the most

malleable and ductile of all the metals, and very heavy. It is quite unalterable by heat, moisture, and most corrosive agents, and therefore well suited for its use in coin and jewelry.

Century Dictionary, volume III, page 2565:

n. * * * A precious metal remarkable on account of its unique and beautiful yellow color, luster, high specific gravity, and freedom from liability to rust or tarnish when exposed to the air.

As before stated, we can find nothing in the language employed in said paragraph 367 (f) to indicate that it was the intention of the lawmakers that the word "gold" as used therein should be understood in other than its common and ordinary meaning. If it were the congressional purpose to limit its scope to sheets and plates of a certain thickness and of a particular standard of fineness or quality and to exclude likewise from the paragraph all base metal watchcases where the gold present is in some other form than such sheets or plates, as insisted herein by the plaintiff, we believe that any such legislative limitation of the term would have been made manifest by appropriate language.

In other words, the plaintiff seeks to set up an arbitrary line of demarcation for determining whether or not a base metal watchcase is in part of gold. It would establish that fact based upon the character, condition, quality, fineness, thickness, quantity, and so forth, of the gold in the case, and not by its presence or absence. If such were the legislative will in the premises, it is indeed singular that some outward or visible indication thereof was not manifested in the language of the statute, particularly since it is obvious that paragraph 367 (f), *supra*, was evidently intended to be construed as an exclusive classification for all watchcases.

We therefore concur in the view of the Government that no such restricted meaning of the word "gold" should be given in determining what constitutes a watchcase "in part of gold." And since it is here established and not seriously disputed that gold is present in the imported watchcases, and that it was deliberately introduced in the process of manufacturing and finishing the cases and covers the bezels thereof for the definite purpose of imparting thereto a desired and distinctive color and character, we believe that such cases respond to the call of the statute as watchcases "in part" of gold.

In *Kenyon Co.* v. *United States*, 4 Ct. Cust. Appls. 344, T. D. 33529, the appellate court had this to say concerning the significance of the term "in part":

What is meant by "in part" as used in the tariff laws is indicated by its constant and frequent contrast with the phrases "wholly" and "in chief value of." The corollary induction attaches to the phrase the signification of a minor "part" in the composition of the articles covered by the paragraph. This modified use

assigns to the previous unmodified use of the word "composed" in the paragraph the meaning before ascribed.

Plaintiff further insists that the present watchcases must be excluded from paragraph 367 (f) (2) and included within the purview of paragraph 367 (f) (4) because they do not "contain" gold in the sense contemplated by the latter provision, in that whatever gold is present in the imported cases has been applied to the surface and not to the structure thereof. Hence, it is contended that such cases must, for tariff purposes, be deemed as "not containing gold." This view is not supported by judicial authority; in fact, the contrary is true.

In *United States* v. *Meadows & Co.*, 5 Ct. Cust. Appls. 532, T. D. 35177, our appellate court had before it an importation of biscuits surfaced with icing. It was classified as dutiable under the provision in paragraph 194 of the Tariff Act of 1913 for "Biscuits * * * containing * * * confectionery of any kind * * *." Free entry for the merchandise was claimed under paragraph 417 of said act as "Biscuits * * * not specially provided for." In sustaining that claim, this court (then the Board of General Appraisers), in *Thos. Meadows & Co.* v. *United States*, 27 Treas. Dec. 13, T. D. 34627, in the course of its opinion, made the following observation concerning the icing on the biscuits:

* * * It is not mixed through the article, and, in our judgment, if separated from the cake and made into various shapes, might properly be termed "confectionery." About 20 per cent of the pieces having been treated in this way, the quantity, in our judgment, would not be negligible; and if, within the meaning of the terms of the statute, this icing is "contained" in the biscuit, this class would be dutiable as assessed. The question whether this surfacing or icing may be considered contained in the commodity is not without difficulty.

The Board, after due consideration, held that the icing was not *contained* within the biscuits for tariff purposes, and that the contention of the plaintiff was therefore well founded. In reversing that decision our appellate court, in *United States* v. *Meadows & Co.*, *supra*, said:

We think too narrow a view was taken of the word "containing." Paragraph 194 covers the article as imported, and whatever was a part of the article as imported is in the tariff sense contained therein. It is a part of the article. The word "contain" means to include or embrace. * * *

The court then quoted various dictionary definitions of the word "contain" and said:

We think it clear that under these definitions and the ordinary acceptation of the term in the tariff law the words "containing * * * confectionery of any kind" are broad enough to include any article of which confectionery of any kind constitutes a part.

Applying the doctrine of that case to the facts here established, we are of the opinion that the watchcases in controversy do contain gold, and we so hold.

We have carefully examined the record herein and have given earnest consideration to the various contentions made by plaintiff, but, in the light of the authorities to which reference has been made, we are satisfied that the words "not containing gold" in paragraph 367 (f) (4), *supra*, are clear and unambiguous and susceptible of but one meaning; namely, that base metal watchcases, in order to be included therein, should not contain any gold whatsoever.

Therefore, upon the record we find and hold that the imported watchcases are composed of base metal containing gold. Consequently, they are excluded from the provision in said paragraph 367 (f) (4) for watchcases not containing gold, and are relegated to the provision in paragraph 367 (f) (2), *supra*, for watchcases in part of gold and as such are dutiable as classified by the collector, in accordance with the Swiss Trade Agreement, *supra*. In view of such conclusion, it becomes unnecessary to consider the alternative claim of the plaintiff alleged under said paragraph 397.

The protest of the plaintiff is, therefore, in all respects overruled and the decision of the collector of customs is affirmed.

Judgment will be entered accordingly.