**No. 57715.**—Bertha B. Maupin *v.* United States, protest 191857–K (Galveston).

FORD, Judge: The suit listed above brings before us for determination the question of whether or not certain blouses imported from Mexico are in part of braid. The collector classified the merchandise as wearing apparel, in part of braids, but not in part of lace and not ornamented, and levied duty thereon at

the rate of 50 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. Plaintiff claims said merchandise to be properly dutiable at 20 per centum ad valorem under paragraph 919 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, as clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for.

At the trial of this case, plaintiff made a statement under oath as to her investigation of prices before she purchased these blouses, but gave no oral testimony as to whether or not they are in any part of braid. Two samples of the involved blouses were admitted in evidence and marked collective exhibit 1.

In his report to the collector, the appraiser described the merchandise as follows:

Item no. 1201 was a cotton blouse having no ornamentation such as lace, embroidery or braid trimming but had a piece of narrow elastic braid inserted in each sleeve to create a fullness effect. The braid being similar to that covered by C. A. D. 155, it is our opinion that paragraph 1529 (a) is applicable.

The blouses represented by collective exhibit 1 have very short sleeves. The edges of the bottom and top ends of these sleeves have been turned back for a distance of approximately one-fourth of an inch and then stitched to the body of the sleeve, thus making a hem of approximately one-fourth of an inch wide. Into these hems has been inserted that which the collector classified as braid. This so-called braid is somewhat shorter than the length of the hem, which causes the sleeve to gather or pucker, and this makes the sleeve more attractive at this point than it would be otherwise.

Counsel for the defendant called as his witness the examiner of merchandise at the port of Dallas, Tex., who testified that he had been examining articles made of braid, and articles made on a braiding machine, for about 13 years, and that, based upon his experience, he would say that the blouses in question are in part of braid. When asked by the court to give his definition of what a braid consists of, the witness stated:

There is a lot of difference between being able to give a definition and being able to recognize it. It is my experience in submitting samples to the C. I. E. of what would be braid, would be usually a narrow piece, usually cotton—it could be other material—in this case it is cotton, made on a braiding machine, which consists of a number of threads woven into a braid. It could be different widths.

An examination of the samples before us discloses that this piece of so-called braid is completely covered and hidden from view when the blouse is completed, and, so far as the appearance of the blouse is concerned, it would seem that any ordinary cord or string would serve the same purpose as the so-called braid. It does not ornament the blouse or anything else because it is completely hidden from view within the folds of the hem on the sleeves of the blouses. It would appear that the primary purpose of the so-called braid is to cause the hem of the sleeve of the blouse to gather or pucker and thus make the sleeve more attractive.

In *A. Stein & Co.* v. *United States*, 28 C. C. P. A. (Customs) 280, C. A. D. 155, the merchandise was described by the court as consisting of elastic material ⅝, ½, and ⅜ inches in width, 36 to 144 yards in length, composed of rayon and india rubber, with fast edges, made on a braiding machine. The merchandise had been classified as elastic braid under paragraph 1529 (a) of the Tariff Act of 1930 and was claimed to be properly dutiable as elastic fabrics of whatever material composed, knit, woven, or braided, in part of india rubber, dutiable at 60 per centum ad valorem under paragraph 1529 (c). The court found that the merchandise in the case at bar was clearly of the same character as that involved in *United States* v. *Bullocks, Inc.*, 25 C. C. P. A. (Customs) 381, T. D. 49465.

In disposing of the question before it, the Court of Customs and Patent Appeals stated that:

We have no doubt that the involved merchandise is braid within the broad meaning of that term, as similar merchandise was held to be in the *Bullocks* case, *supra.* True, the article there involved was a card-table cover, while here it is claimed that the merchandise is only material to be used in making other articles. However, we could not have held that the card-table covers were composed in part of braid unless the elastic strips attached to the covers were in fact braid before being so attached. Merely attaching the strips to the covers did not make them braid.

It is true that the contest in the *Bullocks* case, *supra,* was between paragraph 1529 (a) of the Tariff Act of 1930 and paragraph 1211 of the same act, while here the contest is between paragraph 1529 (a) and paragraph 1529 (c).

It is clear to us that if the involved merchandise is braid within the meaning of that term as used in paragraph 1529 (a), it is classifiable thereunder, even though also embraced in paragraph 1529 (c). Certainly paragraph 1529 (a) so provides by the provision therein reading "by whatever name known, and to whatever use applied, and *whether or not named, described or provided for elsewhere in this Act * * *.*"

In the *Bullocks* case, *supra,* the Court of Customs and Patent Appeals observed that:

Narrow elastic braids, not ornamented, composed of cotton and India rubber and silk and India rubber, used solely for utilitarian purposes, have been consistently held by the courts to be dutiable as "braids" under the tariff acts of 1897, 1909, 1913, and 1922. See *Calhoun, Robbins & Co.* v. *United States,* 8 Ct. Cust. Appls. 360, T. D. 37624; *J. Donat & Co. et al.* v. *United States,* T. D. 31000, 19 Treas. Dec. 1037; *Poirier & Lindeman Co.* v. *United States,* T. D. 36584, 31 Treas. Dec. 57.

The provisions for "braids" contained in paragraphs 358 and 1430, respectively of the tariff acts of 1913 and 1922 were substantially the same as the provision for "braids" in paragraph 1529 (a), *supra.*

*United States* v. *Marshall Field & Co.,* 17 C. C. P. A. (Customs) 1, T. D. 43309, involved the question of the proper classification of cotton and silk corsets with lacings in chief value of silk or cotton, made of braid. In the course of its opinion in that case, the Court of Customs and Patent Appeals referred to a contention made by the appellee in the following terms:

It is claimed that a consideration of said paragraph 1430, together with other paragraphs of said act, will lead to the conclusion that it was not intended to include utilitarian articles of braid within the scope of said paragraph 1430, but only such as are ornamental in character and of the variety generally utilized for trimmings. Even if this contention were meritorious, which we do not find it necessary to pass upon here, there is nothing either in the evidence or in the character of the sample before us to indicate that the particular braids involved here are not ornamental in character and of the variety generally used for trimmings. In view of the state of facts apparent on this record, therefore, no issue of law can arise on this point.

In view of the fact that in the *Bullocks* case, *supra,* the Court of Customs and Patent Appeals found that "Narrow elastic braids, not ornamented, * * * used solely for utilitarian purposes, have been consistently held by the courts to be dutiable as 'braids' under the tariff acts of 1897, 1909, 1913, and 1922," it is clear that had the court found the contention of appellee in the *Marshall Field* case, *supra,* to be supported by the record, it would have held the merchandise dutiable as articles in part of braid, even though the braid was used solely for utilitarian purposes. It is, therefore, immaterial that the primary purpose or function of the so-called braid in this case is utilitarian.

In *Soccer Supply Co. of America, Inc.* v. *United States,* 62 Treas. Dec. 864, Abstract 21344, this court held that certain cotton-braid shoelaces, made on a

braiding machine, were properly classified by the collector of customs under that part of paragraph 1529 (a) of the Tariff Act of 1930 which reads:

* * * braids, loom woven and ornamented in the process of weaving, or made by hand, or on a lace, knitting, or braiding machine * * * and fabrics and articles wholly or in part thereof, * * * by whatever name known, and *to whatever use applied,* and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, * * * 90 per centum ad valorem. [Italics supplied.]

Commenting upon the provisions of the statute above set forth, this court significantly observed:

As will be seen from the above quotation, the only provision for ornamented braids in said paragraph 1529 (a) is such as are loom woven and ornamented in the process of weaving, and in this case counsel have specifically stipulated that the braid of which the shoe laces in question were made was made on a braiding machine. Therefore, the fact that the braids in question may or may not be ornamented would have no bearing on the issue here, since said paragraph 1529 (a) makes no provision that the braids made on a braiding machine shall or shall not be ornamented.

In *P. & G. Robinson* v. *United States,* 24 Cust. Ct. 10, C. D. 1201, this court considered the proper classification of certain suitcases or week-end bags, in chief value of cotton and in part of braid. A witness for the defendant testified that there were about 3 yards of braid in each bag, which braid performs a very substantial function by holding the otherwise open parts of the pockets therein close to the sides of the bag. In holding the merchandise to be articles in part of braid, the court said:

When the Congress enacted paragraph 1529 (a), Tariff Act of 1930, it did so in the light of the decisions of our appellate court in *United States* v. *Smith & Co.,* 12 Ct. Cust. Appls. 384; *United States* v. *American Shipping Co.,* 15 Ct. Cust. Appls. 249; *United States* v. *Tan,* 15 Ct. Cust. Appls. 252; and the Summary of Tariff Information, 1929, wherein it had been made clear that the words "however small" added nothing to the specificity of paragraph 1430, Tariff Act of 1922. It is therefore reasonable for us to assume that the Congress eliminated or omitted the words "however small" from paragraph 1529 (a), Tariff Act of 1930, as being unnecessary. *Richards* v. *United States,* 22 C. C. P. A. (Customs) 352, and *Varsity Watch Co.* v. *United States,* 17 Cust. Ct. 24, affirmed in *Varsity Watch Co.* v. *United States,* 34 C. C. P. A. (Customs) 155.

Therefore, suitcases or week-end bags in chief value of cotton, and in part of braid, even though the value of the braid be negligible, must find classification under paragraph 1529 (a), Tariff Act of 1930, as articles wholly or in part of braid, "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act," rather than under paragraph 923 of said act as "All manufactures, wholly or in chief value of cotton, not specially provided for."

The foregoing decisions defining "braid," and holding "braid" or articles in part of "braid" dutiable under the respective paragraph providing for braid over a long period of years, are herein set out because of certain language employed by the Court of Customs and Patent Appeals in *Davies, Turner & Company* v. *United States,* 39 C. C. P. A. (Customs) 76, C. A. D. 466, in dealing with the proper classification of certain fringes. In the *Davies, Turner* case, *supra,* after quoting definitions of the word "fringe" from the Century Dictionary & Cyclopedia, 1911, Webster's New International Dictionary, 1920 and 1928, and the New Century Dictionary, 1929, the Court of Customs and Patent Appeals made the following observations:

It seems to us that those definitions clearly indicate that the term "fringe" as used in the involved act carries with it the quality of being ornamental. Even though an article may be incidentally ornamental, if its primary purpose is

utilitarian, it may not properly be considered as ornamental. *Paramount Bead Corp., Walter A. Yokel* v. *United States*, 19 C. C. P. A. (Customs) 385, T. D. 45522. There can be no question but that the primary purpose of the involved merchandise is utilitarian.

An examination of paragraph 1529 (a) carries conviction to our minds that all of the articles *eo nomine* set out are ornamental and for the embellishment of the person or the house.

Braids are *eo nomine* set out in paragraph 1529 (a), and it would appear that to follow literally the above quotation from the *Davies, Turner* case would require a holding that unless braids were ornamental they could not find classification under said paragraph 1529. In the instant case, the braid is not ornamental or for the embellishment of the person or the house because the braid is, as heretofore shown, completely hidden from view, by reason of being enclosed within the hems of the sleeves of the blouse.

The statement by the Court of Customs and Patent Appeals in the *Davies, Turner* case, *supra*, that:

* * * Even though an article may be incidentally ornamental, if its primary purpose is utilitarian, it may not properly be considered as ornamental.

\* \* \* \* \* \* \*

An examination of paragraph 1529 (a) carries conviction to our minds that all of the articles *eo nomine* set out are ornamental and for the embellishment of the person or the house.

appears to be in conflict with its holding in the *Bullocks* case, *supra*, that:

Narrow elastic braids, not ornamented, composed of cotton and India rubber and silk and India rubber, used solely for utilitarian purposes, have been consistently held by the courts to be dutiable as "braids" under the tariff acts of 1897, 1909, 1913, and 1922.

Since narrow elastic braids, not ornamented, used solely for utilitarian purposes, have been consistently held by the courts to be dutiable as braids since 1897, as held in the *Bullocks* case, *supra*, it logically follows that elastic braids, ornamental and for the embellishment of the person or the house, used solely for utilitarian purposes, would have to find classification under the provision for braids. However, in the *Davies, Turner* case, *supra*, it was held that even though an article may be incidentally ornamental, if its primary purpose is utilitarian, it may not properly be considered as ornamental, and if it is not ornamental and for the embellishment of the person or the house, it cannot find classification as braid under paragraph 1529, *supra*.

In view of the language employed in said paragraph 1529 (a), "to whatever use applied," we are of the opinion that the question of the use of the merchandise, whether for utilitarian purposes or otherwise, is not material in determining whether a given article is or is not braid. If this be not correct, then it would appear that the language "to whatever use applied" would be without meaning.

Our views on this question find support in the following quotation from *Michaelian & Kohlberg, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 551, T. D. 47554:

Then having pointed out that Congress had provided in separate paragraphs and at different rates of duty for pearls "set or strung" and "pearls not set or strung," the court said:

We are not concerned with the reason for the distinction; it is enough that Congress made it.

So, here we are not concerned with the reason for the inclusion, in paragraph 1529 (a) of the Tariff Act of 1930, *supra*, of the broad language which brings embroidered articles "to whatever use applied" within its terms, even though specifically named elsewhere in the act; it is sufficient that Congress did it.

In *United States* v. *C. I. Penn*, 27 C. C. P. A. (Customs) 242, C. A. D. 93, the Court of Customs and Patent Appeals also held as follows:

We had occasion to construe the provision "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act" in the case of *Blumenthal & Co.* v. *United States*, 14 Ct. Cust. Appls. 17, T. D. 41531, wherein we said, referring to paragraph 1430 of the Tariff Act of 1922:

> * * * That paragraph provides that trimmings and ornaments *by whatever name known and to whatever use applied whether or not named, described or provided for elsewhere in the act, shall be subjected to a duty of 90 per centum ad valorem.* By that language Congress left no doubt as to its intention, and consequently, rules of construction or interpretation cannot be invoked to give to the statute a meaning other than that which its terms clearly and plainly import.

We have many times since that decision affirmed the holding above quoted.

Paragraph 1529 (a) contains the identical language—"by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act"—found in paragraph 1430 of the Tariff Act of 1922, construed in the case last above cited.

In the case of *United States* v. *Bullocks, Inc.*, 24 C. C. P. A. (Customs) 41, T. D. 48330, involving the application of the provisions of paragraph 1529 (a) of the Tariff Act of 1930, we said:

> It was repeatedly held by this court in cases arising under the Tariff Act of 1922 that paragraph 1430 thereof, of which paragraph 1529 (a) of the Tariff Act of 1930 is, so far as here material, the same in effect, invaded all other parts of the act except such paragraphs as were specifically excepted. * * *

The conclusion follows from the foregoing that there can be no doubt respecting the construction of the provision of paragraph 1529 (a) respecting the phrase "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act;" that by its terms the paragraph invades paragraph 1022 and removes therefrom cocoa fiber mats made in part of braid, and therefore the doctrine of long-continued administrative practice in classifying merchandise is not here applicable.

In view of the long line of decisions defining braid, and giving to it its proper classification under the different paragraphs of various tariff acts, some of which decisions are heretofore alluded to, and the all-embracive language of said paragraph 1529 (a), "to whatever use applied," we are not inclined to accept literally the holding of the Court of Customs and Patent Appeals in the *Davies, Turner* case, *supra*, that all of the articles *eo nomine* set out in said paragraph 1529 are ornamental and for the embellishment of the person or the house, insofar as that holding might be applicable to the present state of facts. To do so, would require a holding that an ordinary shoelace in part of braid, ornamental or not ornamental, used primarily for a utilitarian purpose of holding the shoe on the foot, was excluded from paragraph 1529 (a) by reason of the fact that its primary use was utilitarian.

It should be stated, in passing, that the decisions heretofore set out were not called to the attention of the Court of Customs and Patent Appeals in the *Davies, Turner* case, *supra*. Furthermore, the appellate court in that case was concerned only with the question of whether or not the merchandise there involved was in part of fringe, and the question of the proper classification of braids, or of other *eo nomine* provided for articles, was not before it in that case.

For the reasons heretofore stated, we conclude that the involved merchandise was properly classified by the collector as wearing apparel in part of braid. All claims of the plaintiff are, therefore, overruled. Judgment will be rendered accordingly