(C.D. 3862)

HARRY N. BLOOMFIELD Co. *v.* UNITED STATES

---

United States Customs Court, Third Division

(Decided June 27, 1969)

*Walter E. Doherty, Jr.,* for the Plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (Bernard J. Babb, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise the subject of this protest consists of bales of greasy wool exported from Australia in January of 1964. The shipment was invoiced as 133 bales, however, only 132 bales were found at the time of release from customs custody. Plaintiff protests the assessment of duty on the missing bale and claims allowance should have been made upon liquidation of the duty on the one bale reported by the releasing customs inspector as "manifested—not found".

Section 1499 of Title 19 U.S.C.A. cited by plaintiff refers more specifically to shortages in packages which is not involved in this case.

The applicable Customs Regulation is section 15.8(a) which provides that:

> Allowance shall be made in the assessment of duties for lost or missing merchandise included in the entry whenever it is established to the satisfaction of the collector of customs before the liquidation of the entry becomes final that the merchandise claimed to be lost or missing was not imported. The foregoing shall not apply in the case of merchandise arriving under an I.T. entry.

The parties stipulated that the subject merchandise after entry, which date of entry being February 25, 1964, remained on the wharf operated by the steamship company having control over the "S.S. Pioneer Star", the importing vessel, until it was released to the importer on or about February 28, 1964, being all of that time within customs custody.

Plaintiff introduced the official papers and defendant introduced the testimony of one witness, John J. Brennan, Supervisory Customs Liquidator, Region I. Mr. Brennan testified the term "manifested—not found" means that on a particular ship merchandise was listed on the manifest for discharge at this port and at the time of delivery

some of that merchandise is not found. He further testified that merchandise is simultaneously released by the steamship company and customs. During this time the merchandise is physically in the possession of the steamship company although technically it is in customs custody. The customs inspector, who is at the pier, advises the steamship company when merchandise can be released. He does this on receiving the permit for release from customs custody from the person holding it and then advises the steamship company to release the merchandise to the person named in the permit.

In the case at bar, the notation "manifested—not found" was made at the time of release, February 28, 1964, three days after the goods were landed. There is no evidence that 132 bales instead of 133 bales were actually landed. Plaintiff's claim is based on the theory that the bale noted as "manifested—not found" was never imported. In the official papers there is a report of a sampling in which 80 bales were tested on the day before release. The inspector making this sampling did not report a shortage, nor was it his duty to do so.

In an attempt to establish non-importation the only offer of proof made by plaintiff is the placing in evidence of the official papers. These official papers show a shortage three days after landing, but not at the time of importation. Plaintiff relies on the holding in the case of *V. Casazza & Bro.* v. *United States*, 15 Cust. Ct. 296, Abs. 50590 (1945). In that case, sixteen cartons of scotch whiskey were reported as "manifested—not found." The case was submitted upon the official papers and the court held the report sufficient to show a non-importation. However, it appears from the decision that the cases found were *all* examined as to quantity before release as the importer also claimed a non-importation of bottles missing in other cartons and broken. In the case at bar the sampling was of 80 of the bales, not all of the shipment.

The other case involving the term "manifested—not found" relied upon by the plaintiff is *International Food Trading Co., Inc.* v. *United States*, 33 Cust. Ct. 342, Abs. 58331 (1954). In that case the entire shipment, invoiced as 100 cases, was entered for warehouse and 91 cases were refused entry by the Federal Security Agency and were exported. The inspector's report showed 9 cases as manifested not found and the 91 were condemned and sent back. There was additional testimony that the missing 9 cases were never received by the importer nor by anyone else on his behalf. In their opinion the court stated that "in view of the evidence that the entire shipment was entered for warehouse, that 91 cases were condemned and exported, and that the plaintiff never received the 9 cases reported not found by the inspector, we are of opinion that the said cases were not, in fact, imported." Also, in that case the merchandise was examined *in toto*.

In the case at bar the missing bale was reported "manifested—not found" as it was being released, not while the merchandise was undergoing inspection. The inspection had taken place the preceding day and at that time no shortage was reported.

The cases plaintiff cites in which merchandise reported as "not landed—not found" was held not to have been imported are distinguished by the fact that in these cases the merchandise was shown to be missing at the time of entry. Merchandise which never arrived is quite a different matter from merchandise which cannot be found for release at a later date, and there is no evidence of its not having been landed.

Those cases cited by plaintiff in which a shortage reported by the appraiser required the collector to make allowance for such shortage under predecessor statutes and regulations were instances in which the shortage was reported by the appraiser as a result of his examination of the imported merchandise for appraisal. See *United States* v. *Lippmann, Spier & Hahn*, 11 CCPA 336, T.D. 39145 (1922), and *McKesson & Robbins (Inc.)* v. *United States*, 11 CCPA 481, T.D. 39572 (1923). Both of these cases held the appraiser's report of a shortage was binding upon the collector despite the existence of a contradictory report of a landing in apparent good order by the discharging inspector who did not make an examination of the goods at the time of landing. The appraiser's report undertaken as a result of his examination of the merchandise was the report contemplated in the statute.

In the case at bar, the plaintiff makes no claim that the discharging inspector made an appraiser's examination under 19 U.S.C.A., section 1499. Therefore the reported shortage is not such a shortage as provided for in the statute.

One other case cited by plaintiff is worthy of special note on the question of proof of the non-importation, *Olavarria & Co., Inc.* v. *United States*, 11 Cust. Ct. 286, Abs. 48881. In *Olavarria* plaintiff produced proof of non-importation in the form of testimony from a claims adjuster of the steamship company involved. The adjuster testified that the shortage was noted as "in dispute" at the time of loading and that the steamship company paid on the claim. Plaintiff in the case at bar has offered no such proof, instead it merely relies on the discharging inspector's report of "manifested—not found". This notation is found on the back of the report which seems to indicate on its face that the merchandise was "landed".

In the absence of any evidence that the merchandise was not in fact imported, the presumption of correctness attaching to the findings of the collector has not been overcome. Therefore, the protest is overruled.

Judgment will be entered for the defendant.