(C.D. 4039)

Samuel Brilliant Co. *v.* United States

United States Customs Court, Third Division

(Decided June 19, 1970)

*Princi and Lecomte* (*Philip R. Shea* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Owen J. Rader* and *Herbert T. Posner,* trial attorneys), for the defendant.

Before Richardson, Landis, and Rosenstein, Judges

Richardson, Judge: The merchandise of this protest consists of footwear (beach sandals) which was exported from Hong Kong and entered at the port of Boston, Mass., and classified in liquidation under the provision for footwear in item 700.55 of the Tariff Schedules of the United States at the duty rate of 12.5 per centum ad valorem. It is claimed by plaintiff that some 289 cartons of the involved footwear shipment were short landed, by reason of which allowance in duties should have been made therefor in the liquidation of the entry. The text of plaintiff's protest reads:

> We hereby protest the liquidation of the above captioned entry inasmuch as no allowance for duty was made in duty for 289 Cartons shortlanded from the vessel SS Nurith. Total shipment consisting of 4046 Ctns. of footwear containing 24276 pairs covered by H–Bs B/L 5. Vessel arrived Boston May 16, 1967.

We attach herewith photocopy of outturn from the vessel which indicates 3757 cartons were deliverd [sic] to Highway Express and the balance shortlanded.

We request the entry be re-liquidated with refund of duty for the 289 cartons shortlanded. We further request that we be advised whether or not this protest is sustained at the District level.

The district director disallowed the protest, stating:

289 ctns manifested but not found by Customs Inspector and not allowed in liquidation.

And the case is before this court on the issue of non-importation on a record consisting of the official papers and the testimony of two witnesses called on behalf of plaintiff.

James Brilliant, president of the plaintiff company, testified that in December of 1966 his company purchased 4046 cases of footwear from the Yu Ya Trading Company of Hong Kong, that he arranged to have the merchandise transported from Hong Kong to Boston through Pacific Star Lines, that he knew, perforce of a bill of lading, that it was loaded on board the vessel SS Nurith, that he received the merchandise short 289 cartons, that he had no knowledge of the whereabouts of the missing 289 cartons of footwear, and that the missing footwear was never received by the plaintiff.

Timothy F. Keefe, president and board chairman of John T. Clark and Son of Boston, Inc., contractor-stevedores and terminal operators, testified that he has supervision over company employees who unlade vessels at the docks and piers at Boston, that he is familiar with the unlading of the vessel SS Nurith at Boston in May, 1967, and that his company was contract stevedores for Pacific Star Line, the charterer of the vessel Nurith. The witness further testified that the company employs on a 24 hour basis security police who constantly patrol each and every area where cargoes are imported or discharged from vessels and such areas are constantly under surveillance and guard. Mr. Keefe identified a document contained among the official papers which were received in evidence at the trial as a photostatic copy of a page from a delivery book, concerning which he testified (R. 11):

Q. And the information contained thereon, what does that indicate to you?—A. The information contained herein indicates a delivery record of the complete bill of lading of the merchandise purchased by consigned or consigned to a specific consignee; in this instance, S. Brilliant Company. It further indicates the Customs entry number, the merchandise indicated by its respective marks, by lots, and it further indicates the date, the amount, and the consignee's delivery trucking company, the number of pieces accepted with the claimed bill of lading on each specific day. In this instance, it indicates clearly that 4,406 cartons of footware [sic],

under bill of lading 5, I believe, Hong Kong, were consigned to S. Brilliant, and it further clearly indicates that 3,757 were delivered to the trucking company. It further indicates that there was a shortage of 289 cartons from the complete lot indicated here.

It appears that the document to which the witness Keefe addressed himself as aforesaid is the same document to which reference is made in the protest as the vessel "outturn," judging from the same "receipt stamp" of the district director which appears both on the protest and on said document. Further inspection of the official papers reveals that the vessel SS Nurith entered the port on May 16th, that entry was made on May 18th, and that the merchandise was released to plaintiff on August 15, 1967. It is on this latter date that the notation "289 ctns manifested not found" was endorsed on the entry permit (customs Form 7501-A) by inspector J. P. Burns. But it was on May 22nd and May 23rd that the merchandise in question was unladed, according to the outturn receipt. And there are no other papers in the record before us bearing upon the unlading of the cargo from the vessel SS Nurith.

It is well settled that customs duties are to be assessed on the basis of the quantity of merchandise which arrives, that is, which crosses within the line of the customs district, and not on the basis of the quantity of merchandise which is shipped. *Marriott* v. *Brune*, 50 U.S. 619, 632 (1850). And it is also well settled that the ascertainment and certification of the amount of merchandise so imported by subsequent inspection in accordance with statutory rules constitutes legal evidence of the amount of merchandise brought within the customs district. *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, 334, T.D. 32074 (1911). Under these general principles plaintiff contends that the evidence establishes that 289 cartons of footwear were not imported. And defendant contends that the non-existence of such footwear as evidenced by the customs inspector's endorsement on the entry permit 3 months after unlading of the vessel is not evidence of the non-importation of the missing merchandise.

In our opinion the record as presently constituted is not as adequate as it might be to permit of a determination of the question of short-landing posed here. We agree with defendant that the notation of the customs inspector on customs Form 7501-A is not evidence of short-landing as to the 289 cartons of footwear in issue. Indeed, such endorsement relates only to the time of the release of the imported merchandise from customs custody after *unlading*. And, of course, something can happen to imported merchandise which reposes on the docks for some 3 months before it is released from customs custody. *Cf. Harry N. Bloomfield Co.* v. *United States*, 62 Cust. Ct. 752 C.D. 3862 (1969), appeal pending. But the "outturn" document, received in evidence at

the trial without objection as to form or otherwise, imparts a different light on the matter. If full credence is given to this document, it establishes that only 3,757 cartons of footwear were taken off the vessel SS Nurith as of May 23, 1967. It also establishes, in the case of the cartons marked "JTS Green" that 514 cartons were taken off the vessel under a bill of lading calling for only 410 cartons under this particular marking.

The "outturn" document, with its shortage and overage, which was filed with the protest, raises a question as to the extent to which it may correspond with or deviate from the report of the discharging inspector on customs Form 5931, which report is not in the file sent to the Customs Court. Section 4.38 of the Customs Manual reads in relevant part:

> (a) The discharging inspector shall note in red ink on the certified duplicate manifest the disposition of the merchandise specified therein by stating the kinds of entries and their numbers, indicating packages under general order and the disposition of packages for which an entry is not required, and shall note all discrepancies between the manifest, the permits and the merchandise found * * *. He shall also report on customs Form 5931 goods manifested but not landed and goods landed but not manifested * * *. The certified duplicate manifest and the report, signed by the discharging inspector, together with the permits, orders, receipts, and other vouchers covering the merchandise, shall be forwarded to the collector (to the surveyor at New York) and shall constitute the report of the discharge of cargo.

> (b) The collector shall provide the necessary follow up procedures to insure that inspectors' reports of discharge are submitted without undue delay. Upon receipt at the custom house of an inspector's report of discharge it shall be ascertained that the merchandise imported has been accounted for and that post entry and shortage certificate requirements are met.

Section 4.12 of the Customs Regulations reads in relevant part:

> (a) Collectors of customs shall notify masters or agents of vessels of overages or shortages of merchandise on customs Form 5931. The discrepancies shall be resolved promptly by the master or agent and the customs Form 5931 shall be returned to the collector with the completion thereon of a shortage certificate, a post entry, or other suitable explanation of the corrective action taken . . . .

Under the foregoing regulations the "report of the discharge of cargo" constitutes the prime administrative record with respect to a question of shortage. Counsel for the government states in his brief, page 6, that "In order for the Court to make the finding of fact that the subject 289 cartons of footwear constituted a non-importation, the

evidentiary facts which lead to this conclusion should be of record."
We agree with this statement, but the court needs a complete record
in order to make its determination. In view of the specific claim of
shortlanding which was brought to the attention of the district director
in the instant protest, such cargo discharge report—being a report
which is required to be made in the line of duty—constitutes an
integral part of the entry transaction which should have been trans-
mitted to the court as part of the record, following administrative
review of the protest. *Tower Mfg. & Novelty Co.* v. *United States*, 6 Ct.
Cust. Appls. 267, 269–270, T.D. 35478 (1915) ; *M. Pressner & Co.* v.
*United States*, 26 CCPA 186, 194, C.A.D. 16 (1938). The cargo dis-
charge report is part of "the accompanying papers, and all the exhibits
connected therewith" required to be transmitted to the court with the
entry pursuant to 19 U.S.C.A., section 1515 (section 515, Tariff Act of
1930, as amended). *Tower Mfg. & Novelty Co.* v. *United States, supra.*
And inasmuch as this report has not been transmitted to court the
administrative record in this protest proceeding is inadequate to enable
the court to review all *findings* of the district director as to the amount
of duties chargeable against imported merchandise as we are empow-
ered to do. See 28 U.S.C.A., section 1583.

The court has control at this point over the pertinent administrative
records evidencing the entry transaction at bar. And when, as here, it
has become apparent to the court that the relevant administrative
records have not been transmitted to the court with the entry and pro-
test proceeding, it is the clear duty of the court to suspend the trial
proceedings and direct the administrative officials to transmit such
omitted records to the court. *M. Pressner & Co.* v. *United States, supra.*

For the reasons stated and pursuant to the requirements of section
1515, the submission in the instant case will be set aside and the protest
proceeding restored to the next Boston docket for the sole purpose of
receiving records from the district director of customs at Boston, and
the said district director will be directed to transmit to the court at its
next Boston docket (1) the "report of the discharge of cargo" from
the vessel SS Nurith in the port of Boston in May of 1967 as provided
for in section 4.38 of the Customs Manual and consisting of the certi-
fied Duplicate Manifest as endorsed and signed by the discharging
inspector and the signed report of the discharging inspector on customs
Form 5931, if any, and (2) the shortage certificate and post entry, if
any, executed on said customs Form 5931 as provided for in section
4.12 of the Customs Regulations and relating to Boston consumption
entry number 40271 dated May 18, 1967.

An order to this effect will be entered herein accordingly.